MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* FREDERICK M. KETCHUM, JR., by his Guardian, WM. HOLLINGSWORTH WHYTE.

*Issue of New Certificates of Stock to Replace others Wrongfully Cancelled on Forged Assignments—Practice in Equity— Relief granted against One Defendant, and Further Proceedings as to Others.*

Where the Mayor and City Council had wrongfully cancelled certificates of its stock belonging to a minor, upon assignments which were afterwards discovered to be forgeries, and had issued new certificates of the stock to the holders who had presented the certificates for cancellation and transfer, it was HELD :

That the Mayor and City Council should replace the certificates of stock belonging to the minor, and pay to his guardian all arrears of interest due.

In proceedings in equity against several defendants, it is the practice of Courts of equity to grant the relief as to which the way is clear, and reserve the other matters for further proceedings and further order or decree.

APPEAL from the Circuit Court of Baltimore City.

This is an appeal from a decree of the Circuit Court of Baltimore City, passed on the 21st June, 1880, directing the appellant to issue and deliver to Wm. Hollingsworth Whyte, guardian of Frederick M. Ketchum, Junior, as a replacement, certain certificates of the loans of the City of Baltimore, amounting to $19,500, on the ground that they had been wrongfully cancelled by the officers of said city, and for the payment of arrears of interest thereon.

The bill of complaint filed by the appellee against the appellant, on the 6th of November, 1878, alleged the infancy of Frederick M. Ketchum, Jr.; the appointment

by the Orphans' Court of Baltimore City of his mother,. Charlotte M. Ketchum, as his guardian; the receipt by her from her husband's estate, as such guardian, of a cer-- tain sum of money in cash; and of certain bonds received on the 7th March, 1872; that, by an order of the Orphans' Court, the guardian was authorized on the said 7th March, 1872, to sell the bonds and invest the proceeds with the cash, in the six per cent. loan of the City of Baltimore, in the name of the ward aforesaid; which was accordingly done, and the following described certificates. for the same were duly obtained, namely: 1. City Hall Loan of 1890, dated March 9th, 1872, for $18,400, in the name of Frederick M. Ketchum, Junior. 2. Western Maryland Railroad Loan of 1902, dated May 7th, 1872, for $600, in the name of Frederick M. Ketchum. 3. Wes-- tern Maryland Railroad loan of 1902, dated May 8th, 1872, for $500, in the name of Frederick M. Ketchum.

The bill further charged that the certificates of the Western Maryland Railroad Loan, with the name of Frederick M. Ketchum endorsed on each of them, and the certificate of the City Hall Loan of 1890, with the name of Frederick M. Ketchum, Junior, endorsed on the same, were, about May, 1876, July, 1876, and January, 1877, severally returned to the City Register for cancella-- tion; but the bill charged that such signatures to the endorsements aforesaid were forgeries, [See *Bishop* and *Helm vs. The State of Maryland*, 55 *Md.*, 138,] and not genuine signatures of the said Frederick M. Ketchum or Frederick M. Ketchum, Jr., (who is one and the same per- son,) and not authorized nor ratified by him, nor were such endorsements authorized or ratified by his then guardian,. nor by the Orphans' Court in any manner; for that at the period when said certificates were returned to the City Register aforesaid, the said Frederick M. Ketchum, was between nine and ten years of age; that the trans-- fers of said certificates and their issue to parties to the.

complainant unknown, were wholly void, and the cancellation of them by the city officers a wrongful act; and the bill prayed for the issue of new certificates to the complainant for the same amount of stock loan as called for in the original certificates aforesaid, and for further relief. The bill also alleged, that Charlotte M. Ketchum, guardian as aforesaid, filed a petition in the Orphans' Court on the 11th May, 1878, praying to be allowed to retire from the guardianship of her said son, and for some other person to be appointed in her stead; whereupon the Court passed an order removing her and granting letters of guardianship to William Hollingsworth Whyte.

The Mayor and City Council of Baltimore duly appeared and filed its answer, suggesting the names of the parties. to whom the certificates of stock had been issued in lieu of the originals, in the name of Frederick M. Ketchum and Frederick M. Ketchum, Junior, and that such persons or corporations should be made parties defendant, so that all equities between the Mayor and City Council and the said parties to whom the new certificates had been issued, might be adjusted in the same suit. Thereupon,. proper supplemental proceedings were had, whereby all persons or corporations so connected with the issue of said stock loan were made parties defendant, and appeared and answered. The former guardian was also made a party and answered. The answer of the Mayor and City Council admitted the issue of the original certificates in the name of Frederick M. Ketchum and of Frederick M. Ketchum, Jr., as charged in the bill, and the return of them to the City Register with the endorsements aforesaid, and their cancellation, and the issue of new certificates to the parties named in the answer; but the defendant denied all knowledge of any forgery of said endorsements, or that the said stock loan constituted any portion of a ward's estate in Court, or belonged to an infant or person under disability, or was part of any trust fund whatever. And the

answer detailed the circumstances under which the cer-
tificates were surrendered, cancelled and new ones issued.
The defendant denied all negligence on its part, but
claimed that the loss was due to the negligence of the
former guardian in not filing the order of the Orphans'
Court, authorizing the investment, with the officers of the
city, or otherwise notifying them of the fact that the stock
belonged to an infant, and the answer also imputed to her
general negligence, by which the loss occurred.

After all the testimony had been taken as to the case
between the complainant and the Mayor and City· Council,
the complainant by petition, prayed the Court, for the rea-
sons stated in the opinion of this Court to act upon his case,
and to pass a decree in his favor as against the Mayor
and City Council.

All the defendants were notified of this petition, and
the Mayor and City Council alone answered it, and while
admitting the hardship of the case, set up the objection
that the delay was caused by the prayer of the bill, ask-
ing for a new issue of certificates of stock in lieu of those
wrongfully cancelled, and in making the holders of the
new certificates (improperly issued upon the forged en-
dorsements,) parties defendant. The defendant's answer
also represented, that the complainant should pursue his
remedy against the holders of the stock certificates wrong-
fully issued, and where the stock has passed into other
hands, that of parties without notice, then to demand a
decree for the value of the stock so wrongfully transferred.
The defendant suggested an order, if the Court saw fit,
for the interest on the loan in favor of the infant, for his
immediate support.

Whereupon the Court below (DOBBIN, J.,) passed the
decree first mentioned, reciting therein that in any event,
the Mayor and City Council must be ordered to replace the
certificates of stock belonging to the complainant, and
wrongfully cancelled by the city's officers. This decree

further provided, that all questions between the several defendants as to the ultimate liability for the improper transfer of the stock of the infant Ketchum, should remain unaffected by this order, and that the case should proceed without prejudice to the rights of any party thereto, by reason of said order.

The cause was argued before BARTOL, C. J., GRASON, ALVEY and MAGRUDER, J.

*James L. McLane, City Counsellor*, for the appellant.

That the order of June 21st, 1880, although designated and treated as "interlocutory," is *final* as to the complainant, cannot be disputed. It grants to the appellee all the relief and the specific relief prayed for in his bill of complaint. When complied with by the appellant, the appellee's interest in the suit would be ended. Can the Circuit Court, after the passage of such an order, still hold the bill for the purpose of determining further equities between the several co-defendants? Is not the only *nexus*, which bound the parties together in one suit, dissolved, when the complainant is decreed all the relief which he asked for, or in any aspect of the case could be entitled to ask, at the hands of the Court? Even as between the present appellant and the appellee, it is submitted that to order the commission to be returned in its unfinished state, so soon as the testimony of one side had been taken, and before any testimony for the defendant could be given, and then to hear the case thus presented, and to determine it finally as between the appellant and appellee, involves a serious departure from settled rules of judicial procedure, not even to be justified by the Court's provision of the ultimate result.

Nor was there anything in the facts and circumstances of the case to render necessary such a departure from established practice. In its answer to the guardian's

petition, the appellant signified its readiness, whenever ordered by the Court, to pay over to the guardian pending litigation for the support and maintenance of his ward, the accrued and suspended interest on the certificates which had been transferred. This, it is submitted, was all that at that step of the cause could have been asked for on the infant's behalf, and all that equity required. The objections to the decree founded upon the legal and constitutional restraint which surround the issue of any portion of the public loan of the City of Baltimore are strengthened by the form of the decree, which requires the issue of certificates *nunc pro tunc* to be dated back some *nine years,* and which would have to be signed by the present Mayor and Register, neither of whom was in office nine years ago. In this particular, if no other, it is submitted that the order appealed from would have to be reformed.

*Wm. Pinkney Whyte,* for the appellee.

The right of the complainant to recover as against the Mayor and City Council, is scarcely a matter of disputation, but the objection is, that the form of the decree is not correct.

It is difficult to understand how, in the present state of the law, any objection can be made to the form of the decree in this case. *Brown, Lancaster & Co. vs. Howard Fire Insurance Co.,* 42 *Md.,* 390 ; *Hambleton & Co. vs. The Central Ohio R. R. Co.,* 44 *Md.,* 557 ; *Hildyard vs. South Sea Co., et al.,* 2 *Peere Wms.,* 76.

It is clear there was no actual transfer in this case, and the stock remained in Ketchum. The certificate was the evidence of that ownership, and should be replaced by the city. *Chew & Goldsborough vs. Bank Balto.,* 14 *Md.,* 319 ; *Stewart, et al. vs. Firemen's Ins. Co.,* 53 *Md.,* 564 ; *Pollock vs. National Bank,* 3 *Sheldon,* 274.

How much clearer is this case, where no transfer was made, because of the forgery of the power of attorney.

Nor is the defendant at all relieved by the absence of negligence on its part. The case of *Telegraph Co. vs. Davenport*, 97 *U. S.*, 369–371, is on all-fours with this case. See *Simm vs. Anglo-American Telegraph Co.; Anglo-American Telegraph Co. vs. Sterling*, 5 *Law R.*, Queen's Bench Division, 188–213, 1879–'80; 4 *Law and Equity Reporter*, 395; *S. C.*, 5 *Reporter*, 219; *American Law Reg.*, March, 1881, *p.* 168; 123 *Mass.*, 111.

Whatever questions may arise on the principle of estoppel, among the purchasers of the certificates of stock, issued by the city, and which are held by subsequent assignees, do not occur in this case at this time. They were reserved by the Court below.

MAGRUDER, J., delivered the opinion of the Court.

The bill was filed by the appellee, to require the Mayor and City Council to issue new certificates of city stock, in lieu of those belonging to the minor, Ketchum, which had been wrongfully cancelled upon forged assignments thereof, without the knowledge or privity of the minor or his guardian.

The answer admitted the issue of the original certificates and their return with the endorsements and their cancellation, and the issue of new certificates to certain persons and corporations named, who it is insisted are necessary parties; but denied all *knowledge* of the forgery, or that the stock was a part of the ward's estate, or belonged to an infant or person under disability, or was part of any trust fund; but makes no *denial* that such were the facts.

Proof was taken, making out the complainant's case, and the counsel for the city have not, in this Court, really questioned the infant's right to relief as against the city, only objecting to the time and manner of passing the decree, leaving the rights of the other parties as against the city, unadjudicated and held for further proceedings and decree.

Indeed, the right to the relief sought, could not well have been insisted, being too well settled by the decisions of the Courts here and elsewhere. *Brown, Lancaster & Co. vs. Howard Fire Ins. Co.*, 42 *Md.*, 384; *Hambleton vs. Central Ohio R. R. Co.*, 44 *Md.*, 551; *Telegraph Co. vs. Davenport*, 97 *U. S.*, 369.

The only question is, was the decree passed prematurely. The other defendants were made parties at the express suggestion of the city, and it cannot be heard to object that they were so made. They were not however, necessary parties to this cause. The relief sought by the complainant as against the city, was in no manner affected by, connected with, or dependent upon, any claim or right as between the city and the other defendants.

So that, when in the progress of the cause, after, as has been conceded, all the testimony had been taken, bearing on the issue between the complainant and the city, the complainant by his petition, prayed the Court, on account of his impoverished and needy condition, to act upon his case, as there was no contest in reality as to his right to recover; and the answer to this petition makes no valid objection to such proposed action, we can see no good reason in equity and good conscience, why the complainant should have been kept waiting, in order to have first adjudicated rights and interests, in which he was in no wise concerned, and upon the settlement of which his own right to relief in no manner depended, and thus keeping him waiting the result of a tedious and protracted litigation in which he was in no manner concerned.

In such cases, it is the constant practice of Courts of equity to grant the relief as to which the way is clear, and reserve the other matters for further proceedings, and further order or decree.

We think, therefore, the decree was properly passed, and must be affirmed; and as the other defendants were

made parties by the concurrence of both sides, and as the settlement of their respective rights in this case will tend to prevent more protracted litigation, and greater cost and delay, we think it proper, under the circumstances, to remand the cause, in order that such further proceedings and decree may be had as the rights of the respective defendants may appear to require.

*Decree affirmed with costs, and*
*cause remanded.*

(Decided 30th June, 1881.)