(Decided December 6th, 1895.)

---

. THE BOLTON MINES COMPANY, Claimant, *vs.* FRANCIS H. STOKES and HANSON H. HAINES, Trustees.

*Election Between Remedies—Estoppel by Judgment—Voluntary Discontinuance of Suit—Replevin—Rescission of Contract.*

Where a party has the choice between two or more alternative remedies or forms of action, and, selecting one of them, he pursues it to final judgment, then, whether that judgment be for him or against him, he cannot resort to the other form of action against the same defendant for the same demand.

But a discontinuance *before* judgment by a plaintiff of a suit in one of such forms of action, does not prevent him from afterwards resorting to the other remedy.

Plaintiff sold goods to a party who failed and made an assignment for the benefit of creditors before the maturity of the note given to plaintiff for the purchase money.   Plaintiff attempted to rescind the contract of sale and sued out a writ of replevin, under which the goods sold were taken from the trustees in the assignment and de-

livered to plaintiff.   Plaintiff offered to return said promissory note, which offer was refused by the trustees.   The replevin suit was dismissed by plaintiff before judgment, and afterwards the trustees recovered judgment on the replevin bond for the value of the goods seized.   This judgment was paid.   Plaintiff then claimed payment of the promissory note from the estate in the hands of the trustees. *Held*, that plaintiff was not estopped to claim payment of the note from the assets in the hands of the trustees, because he had instituted and abandoned before judgment the replevin suit.

Appeal from an order of the Circuit Court of Baltimore City (DENNIS, J.), by which the exceptions filed to the claim of the Bolton Mines Co. in *ex-parte*, in the matter of the trust estate of the Waring Manufacturing Company, were sustained.   The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE and ROBERTS, JJ.

*William S. Bryan, Jr.* (with whom was *Fielder C. Slingluff* on the brief), for the appellant.

The action of the Court below proceeded upon the theory that when the appellant replevied the phosphate from the assignees of the Waring Manufacturing Company, he elected to repudiate and rescind the contract of sale which was the consideration for the note filed as the claim in this case, and that he was bound by that election, and that because he first attempted to avoid the contract and note, he was estopped from now assuming an inconsistent position and claiming that the contract and note are valid.   It will be noted that the remarkable result of the above course of reasoning is that a *Court of Equity* permits *trustees* to exact from the appellant the full value of its phosphate (in the form of the judgment for $4,464.72, affirmed by this Court in 78 Md. 454), and at the same time to refuse its dividend for the purchase price of that phosphate.   In other words, the general creditors of the insolvent corporation enjoy the value of the appellant's phosphate, and do not let it get even a dividend on the purchase price thereof.   They both eat

the cake and have it too.    Estoppels should be mutual.    If the appellant cannot be heard to say that the purchase money note is a subsisting debt of the Waring Manufacturing Company, the appellees cannot be heard to deny that it is so ; which reduces the whole thing to an absurdity.    The appellant did not voluntarily assume the position that the note and sale were valid ; it was forced into it when the appellees defeated its surety in the suit on the replevin bond.    When it was decided that it could not retake its property, the only thing left for it to do was to claim to be paid for it, at least in part.

" Where a defendant has successfully resisted the specific performance of a contract, he will not be permitted to set up such contract as binding in order to defeat an action brought to recover money paid in pursuance of such avoided contract." *Pendleton* v. *Dalton*, 92 N. C. 185.   The above proposition is the exact converse of the one at bar.    Here the appellant unsuccessfully resisted specific performance of the contract of sale of the phosphate and, therefore, should be permitted to set up such contract as binding in order to obtain the money to be paid in pursuance of such unvoidable contract.    If the first proposition is true, there is no escape from the second.

Here no wrong can be done by permitting the appellant to change its position on the question of the contract of the sale of the phosphate.    As the assignees have enjoyed the value of the phosphate, common honesty requires that they should pay the appellant, who has lost its phosphate, at least a dividend on its contract price.    It is familiar every day practice in Baltimore for attaching creditors who have unsuccessfully assailed a deed of trust for the benefit of creditors as fraudulent, to afterwards come in and take their dividend *under* the deed.    And the same practice is recognized generally in other jurisdictions as being the law.    *Burrill on Assignments,* page 607 ; *Brashears* v. *West,* 7 Peters, 615 ; *Vernon* v. *Dana,* 8 Dana, 254 ; 2 *Encyclopaedia of Pleading and Practice,* page 873, note ; *In re Van Norman,* 41 Minn.

494.   This last case is most instructive, and bears a striking analogy to the case at bar.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellees.

On no other theory than that of the rescission of the contract can we explain the tender of the note, or give even a *prima facie* justification of the institution of the replevin suit.   The Bolton Mines Company then having declared its intention to rescind this contract, and hence necessarily to treat the note a part of the transaction as no longer binding, it is now bound by its election and cannot be allowed to change front and assume the wholly inconsistent position that the contract *is* binding and the note *still* enforceable.   The company had its election to rely on the note, thus affirming the contract, or to replevin the fertilizers, and offer to return the note thus rescinding the same.   It adopted the latter course with a full knowledge of all the facts, and having carried out the same by legal proceedings, equity will not now allow it in further proceedings to take a position diametrically opposed to its former stand.   This general doctrine is well established in our equity jurisprudence everywhere, and it is strikingly enunciated by this Court in the case of *Edes* v. *Garey*, 46 Md. 41.   And also in the following cases: *Beall* v. *Pearre*, 12 Md. 566 ; *Walsh* v. *Chesapeake and Ohio Canal Company*, 59 Md. 427 ; *Kiddall* v. *Trimble*, 1 Md. Ch. 143.   The cases, however, which most nearly resemble the present in their details are : *Weil* v. *Brownstein*, 35 Hun. 68 ; *Fawell* v. *Myers*, 59 Mich. 180.

The fact that the plaintiff fails to obtain any redress in the proceeding which he first adopts is immaterial.   In *Thompson* v. *Howard*, 31 Mich. 309, a father brought an action of assumpsit for his son's wages on the theory that his son had been employed by the defendant, and having discontinued this suit, it was held that he was precluded by the doctrine of election from bringing another action on the

case on the inconsistent theory that the defendant had un-
lawfully enticed away and harbored said son.   So, in the
case of *Steinbach* v. *Fire Ins. Co.*, 77 N. Y. 498, the plain-
tiff brought suit on a policy of insurance, which contained
a condition forfeiting it, in case certain articles classed as
specially hazardous were kept on the premises.   The suit
was successfully defended by proof that the plaintiff kept
fireworks.   Thereafter the plaintiff brought an action to
reform the contract by inserting a clause authorizing the
keeping of fireworks, and it was held, that having recog-
nized the contract of insurance by bringing the first suit, he
could not now take the inconsistent position of objecting to
the correctness of the terms of said contract, and that the
judgment against the plaintiff in the first suit was a com-
plete bar to the second action, though otherwise the second
action could have been successfully maintained.   To the
same  effect  is  *Washburn*  v.  *Insurance  Company*, 114
Mass. 175.

McSHERRY, J., delivered the opinion of the Court.

In December, 1889, the Bolton Mines Company con-
tracted to sell to the Waring Manufacturing Company a
quantity of fertilizers.   The sale was made, the goods were
delivered and the purchaser gave its promissory note to
the vendor on March the fifteenth, 1890, for the price
agreed on, payable in four months after its date.   On the
twenty-third day of May, 1890, before the maturity of this
note, the Waring Manufacturing Company executed to
Hanson H. Haines and Francis Stokes, trustees, a deed of
trust for the benefit of its creditors, and the trustees filed
their bond in Cecil County on May the thirty-first, and in
Baltimore City on June the eleventh, 1890.   On June the
ninth, of the same year, the Bolton Mines Company sued
out a writ of replevin, and under it the sheriff seized and
took from the possession of the trustees and turned over to
the Bolton Company the same fertilizers that had been sold
by it to the Waring Company under the contract of Decem-

ber, 1889, and five days afterwards the Bolton Company tendered to the trustees the promissory note given for the purchase price, but the trustees declined to receive it.  After the Bolton Mines Company got possession of the fertilizers under the writ of replevin, it discontinued or dismissed the replevin suit *without trial,* and thereafter, on April the tenth, 1891, the trustees instituted suit in the Superior Court of Baltimore City against the surety of the Bolton Mines Company on the replevin bond which had been given by it; and that suit resulted in a judgment in favor of the trustees for the penalty of the replevin bond, to be released on the payment of the sum of four thousand four hundred and sixty-four dollars and seventy-two cents, the value of the replevied fertilizers at the date of their seizure under the writ of replevin, together with interest to the date of the verdict. Part of this judgment has been paid and the residue is to await the result of this proceeding, but may be treated as actually paid.   The Bolton Mines Company then filed in the Waring Company's trust estate proceeding the note of the Waring Company held by the Bolton Company, and when the auditor made his report distributing the cash assets in the hands of the trustees amongst the creditors of the Waring Company, he allowed to the Bolton Mines Company its ratable share or percentage upon the note of March the fifteenth.   To this allowance Haines and Stokes, who are creditors as well as trustees, filed objections.   The ground upon which these trustees in their character as creditors object to this allowance is, that the Bolton Mines Company having by replevying the fertilizers for the payment of which the note was given, disaffirmed the sale and having treated the contract of purchase as rescinded, cannot, after a judgment has been obtained against it on the replevin bond for the value of the identical articles replevied, reaffirm the sale and claim to participate in a distribution of the proceeds of the debtor's assets.   The Court below so decided, and hence this appeal.

Does the fact, then, that the Bolton Mines Company sued

out a writ of replevin and seized thereunder the same fertil-
izers which it had previously sold to the Waring Company
preclude the vendor, the Bolton Company, from asserting
a claim to a proportion of the creditor's assets, if the vendor
abandoned the replevin suit without trial, and then paid to
the vendee's trustees the full value of the replevied articles ?
This is the single question which the pending appeal pre-
sents.

The situation is a peculiar one.    The Bolton Mines Com-
pany and the trustees are precisely in the position both
would have occupied had not the replevin been sued out,
for the Bolton Mines Company still has the note of the
vendee ; the trustees have in money the value of the fertil-
izers and the note is unpaid.    This being so, the Bolton
Company asks a Court of Equity to allow to it from the
assets of the debtor—in which assets are included the values
of the creditor's fertilizers—a percentage equal to that dis-
tributed to the debtor's other general creditors ; but the
Court, by its order, refuses this request and excludes the
Bolton Company from participating in the distribution of
even the very funds which have been realized from the
identical property that the Bolton Company sold and de-
livered to its insolvent debtor, and for which the vendor has
received no payment whatever.    Can that order be main-
tained ?

It is not pretended that it can. be supported upon any
other theory or ground than this :    That the creditor having
by the replevin suit elected to treat the original contract of
sale as rescinded, cannot afterwards assert the validity of
that same contract and claim to be paid for the goods fur-
nished under it ; that having two alternative remedies and
having selected one of them and having failed to prosecute
it to a final judgment, it cannot resort to the other.

Thus, abstractly put, the proposition appears far more
reasonable and just than when it is practically applied.  The
actual result of its application to the facts of this case is,
that the Bolton Company loses the full value of the fertil-

izers which it sold to the insolvent vendee, and is, besides, entirely cut out from sharing in the vendee's assets. The vendor, the Bolton Company, therefore, gets nothing, and the other creditors get the value of the Bolton Company's fertilizers. It must be an exceedingly rigid and stringent rule of law that will constrain a Court of Equity to work out such a singular and inequitable result. Is there such a rule as that?

It cannot be denied that " the law is adverse to multiplying suits ; and if a party has a choice between two actions upon the same demand, and he selects one, which is *decided* by a competent tribunal, either for or against him, *as a general rule*, he will not be permitted to resort to the other." *Beall* v. *Pearce, Admr.*, 12 Md. 366 ; *Walsh and McKaig* v. *C. and O. Can. Co.*, 59 Md. 427. And so in *Edes* v. *Garey and Lanahan*, 46 Md. 24, where Carson was both executor and trustee under a will, and as executor transferred certain funds to himself as trustee, and to secure these funds executed a deed to himself as trustee, conveying certain lots in Baltimore City, but failed to place the conveyance on record. After his death a creditor's bill was filed and these lots were sold. The parties for whose benefit the unrecorded deed was executed claimed the proceeds of the sales of the lots conveyed thereby ; and these proceeds were allowed to them. They afterwards filed a bill in equity against the sureties on Carson's bond as executor, but this Court held, " that common sense and common justice require that, having claimed and having received the entire proceeds from the sale of the property conveyed by the unrecorded deed upon the express ground that it was executed by Carson to secure the complainants, on account of the money belonging to them, and which he held as trustee under the will, they should not be permitted to deny those facts in a suit brought against the sureties on the administration bond." And so in the still more recent case of *Fisher et al.* v. *Boyce et al.*, 81 Md. 46, it appeared that the will of James Boyce was duly admitted to probate by the

Orphans' Court of Baltimore County ; that thereupon the executors filed a bill in equity against all the parties interested in the estate of the decedent, asking the Court to construe the will and to assume jurisdiction over the administration and settlement of the entire estate.   This bill was answered by all parties in interest, including those who subsequently sought to *caveat* the will.   In those answers the defendants (two of whom were the same persons who afterwards assailed the will by *caveat*), unequivocally admitted the due execution, publication and probate of the will. Later on the Circuit Court, by its decretal order, assumed jurisdiction of the whole estate and of its administration. Afterwards one of the defendants filed a petition in the equity case, claiming that she was entitled *under the will* to certain income, and praying an allowance *under the will* for her maintenance pending the settlement of the estate.   This petition was answered, and both petition and answer were heard upon *proof adduced,* and finally the petition was dismissed by the Court.   Two years later, two of the defendants in the equity proceeding filed in the Orphans' Court a *caveat* to a part of the will, and upon appeal this Court held they were estopped to question its validity.   They had taken a beneficial interest under the will, whose validity they formally and solemnly asserted, and they were thereafter prohibited from setting up any adverse right, which, if successfully asserted, would have defeated the full operation of the instrument.   And so in *Keedy* v. *Long,* 71 Md. 385, it was held that where a person had two alternative remedies open to him, and proceeded upon one to a final judgment, he would be precluded from resorting to the other one afterwards.   And to the same effect is *Bach and Son* v. *Olmstead,* 78 Md. 132.

It will be observed and must be borne in mind that· in all these and similar cases, it was not the mere institution of a suit which was abandoned before a final judgment had been reached, that operated to estop the prosecution of a subsequent suit between the same parties and founded on

the same cause of action, but that it was the selection by
the plaintiff of one of two remedies that were open to him,
and a *decision* thereon by a competent tribunal that pre-
cluded a resort to the other inconsistent remedy.   The
obvious principle which underlies this class of cases, must
therefore be, that when a party has deliberately selected
his form of action and has pursued it to a final judgment,
and whether that judgment be for or against him is wholly
immaterial, he shall not be at liberty to again vex the same
defendant with another suit in a different form of action for
the identical demand involved in and passed upon by the
antecedent litigation.   Where the remedies are alternative
and not cumulative, his choice of the one and his pursuit of
it to a final judgment will exclude the other or opposite
remedy ; and having thus repudiated the latter, he cannot
afterwards ignore the judgment actually rendered, change
his position and adopt the remedy he had repudiated and
repudiate the one he had adopted.   Upon the plainest princi-
ples of public policy he would be absolutely estopped to do this,
because " a man who obtains or defeats a judgment by plead-
ing or representing an act in one aspect, will be precluded
from giving it a different and inconsistent character in a sub-
sequent suit upon the same subject." *McQueen's Appeal*,
104 Pa. St. 595.   It is an inflexible and invariable rule that
when the cause of action is substantially the same, and is or
might be sustained by the same evidence, no change in the
form of the suit or of the pleadings shall avail to withdraw
a matter, which has once been judicially determined, from the
estoppel of the adjudication.   Consequently a judgment in
one suit will be conclusive in every other where the cause
of action is substantially identical, notwithstanding a change
in the form in which the action is brought.   But for
this defense to be availing there must have been a *judg-
ment ;* for a discontinuance of the suit before judgment
will create no such estoppel.   It has been established
both in this country and in England, that whenever an
act is done or a statement is made by a party which can-

not be contravened or controverted without fraud on his part and injury to others whose conduct has been influenced by the act or admission, the charaeter of an estoppel will attach to what would otherwise be mere matter of evidence, and it will become binding, even in opposition to proof of a contrary nature. But it is perfectly obvious that the case at bar does not belong to this class of estoppels, for the change in the character of the claim by the appellant has resulted in no fraud or injury. The case of *Farwell* v. *Myers*, 59 Mich. 179; S. C., 25 Am. L. Reg. 243, and the case of *Washburn* v. *Great West. Ins. Co.*, 114 Mass. 175, both cited by the appellee, sustain our conclusions.

In the Michigan case, the claimants sold to the defendant goods to the value of ten thousand dollars. The defendant a few days afterwards executed a deed of trust for the benefit of his creditors, and the vendors sued out a writ of replevin for the goods so sold to the insolvent. Under the writ a portion of these goods valued at about four thousand dollars, was recovered, but the rest could not be found. The vendors thus got possession of and retained the part of the goods which they had replevied. They then filed their account against the insolvent estate for ten thousand dollars, less four thousand dollars, the value of the goods replevied. The Court held that having elected by the replevin suit, *which went to trial and to final judgment,* to rescind the contract, they were bound by that election, and could not in the distribution of the insolvent's estate treat the contract as in force after having proceeded in the replevin suit upon the assumption that it had been rescinded. The Court held that by rescinding the sale and prosecuting to judgment an action of replevin for the goods sold, on the theory that the fraud of the assignor had vitiated the contract and that they owned said goods, the plaintiffs had elected their remedy, and cannot be allowed to come into Court a year afterwards, because of their failure to secure adequate relief in the replevin suit and base a claim upon the inconsistent idea that the goods were sold to the assignor. It may not

be amiss to observe that in *Powers* v. *Benedict*, 88 N. Y. 605, a case quite similar to the one at bar, a conclusion precisely the reverse of that announced in the *Michigan case* was reached, and the doctrine was recognized that a partial recovery of goods under a replevin, sued out under circumstances such as we have here, *did not* bar an action for the remainder, or preclude the vendor from filing a claim in the insolvent vendee's estate for the value of the balance of the goods, which he failed to recover under the writ of replevin.    In the *Mass. case*, where a person filed a bill in equity to reform a policy of insurance by striking out a clause of warranty, and afterwards brought an action at law upon the policy as written, alleging compliance with the warranty, and after *a trial on that issue* had *judgment* rendered against him, it was held that he had elected his remedy and had waived his right to prosecute his bill for the reformation of the policy.    And to the same effect are *Sanger* v. *Wood*, 3 John. Ch. 416, and *Steinbach* v. *Fire Ins. Co.*, 77 N. Y. 498.

The record now before us discloses the fact that the replevin suit was not pressed to trial, and that a judgment was not entered therein.    The suit was voluntarily discontinued.    To hold that the vendor by merely suing out the writ, though it, the vendor, subsequently abandoned the proceeding and paid to the vendee's trustees the value of the goods replevied, forfeited all right to claim payment for these very same goods, would be to stretch the doctrine of election of remedies and to widen its consequences far beyond any limits heretofore recognized in Maryland.    It would, in fact, prescribe as a penalty for a mere mistake in bringing a suit, not the usual one of costs, but the far graver one of a forfeiture of a just and meritorious claim ; and its adoption would place a Court of Equity in the anomalous situation of being forced to say to a suitor : You made a mistake in suing out this writ of replevin, but you recognized your error and promptly discontinued the action; your mistake has hurt no one because the trustees have re-

covered from you the full value of the goods you took, and the creditors have, therefore, not been prejudiced. Confessedly, you delivered the insolvent the goods, and confessedly you have not been paid for them. Their value forms part of the insolvent's estate, but because you inadvertently supposed you had a right to reclaim the goods (though when you discovered you had not such right you abandoned your suit;) you shall not receive a dollar of your debtor's estate—you shall not get even a part of the money realized from the very property which you sold and delivered to the insolvent. With equal propriety could a legatee, who having caveated a will subsequently dismissed the proceeding without a trial, be deprived of his legacy; but it has been distinctly held, that he is not estopped to recover his legacy. *State, &c.,* v. *Adams,* 71 Mo. 620.

Estoppels must be reciprocal, and bind both parties. They operate only on privies in blood or estate, and can be used neither by nor against strangers. He that shall not be concluded by the record or other matter of estoppel, shall not conclude another by it. *Alexander* v. *Walter,* 8 Gill, 239. The trustees of the vendee were not bound by the replevin suit, nor by the vendor's election of that remedy. They brought suit upon the replevin bond and recovered a judgment for the full value of the replevied property, and this they did upon the claim that the title to the fertilizers had vested in the Waring Manufacturing Company under the contract of sale with the Bolton Company. In other words, the trustees successfully insisted on the contract of sale being a subsisting, unrescinded contract, notwithstanding the attempted repudiation of it by the Bolton Company. Having recovered a judgment, and having collected the money due under that judgment, upon the hypothesis that the contract was not rescinded, but was in fact in full force, what standing have they in their capacity as creditors to object to the payment of the promissory note held by the vendor of those goods for the price at which the goods were sold? Having recovered the value of the goods on the

theory that the contract was not rescinded, they object to the payment of the note on the opposite ground that the contract had been rescinded. This is certainly, as the Scotch say, "to approbate and reprobate." *In re Chesham*, 31 Ch. D., 466.

If the doctrine sanctioned in *Thompson* v. *Howard*, 31 Mich. 309, to the effect that it is immaterial whether the plaintiff obtains redress in the first action or not, were adopted, and it were held that the mere fact of bringing a suit in one form of action, though abandoned without trial or without judgment, forever precluded a resort to any other form of action respecting the same subject-matter, it would when logically followed out prevent an amendment from one form of action to another, although the right to make such amendments is expressly given by sec. 34, Art. 75, of the Code. It would prevent such amendments, because if the mere naked selection of one remedy is such an exclusion of another inconsistent one as to estop the party who has selected the first from ever afterwards resorting to the second, the bare bringing of a suit in one form of action would necessarily preclude a resort, even by way of amendment, to the opposite or inconsistent form of action. If the doctrine of *Thompson* v. *Howard*, were generalized "it would amount to this, that a litigant elects his remedy in every case in the first instance at his peril. If he finds that he has made a mistake, whether in consequence of erroneous views of law or fact, he has nevertheless estopped himself from retracing his steps. He cannot dismiss his suit and institute a new proceeding of a different nature against the same party. But no one supposes that this is the law." *Anchor Milling Co.* v. *Walsh*, 20 Mo. App. 107.

We hold, then, that the mere fact that the Bolton Mines Company sued out a writ of replevin to recover possession of these goods and then discontinued the proceeding without trial and before judgment, and without realizing anything by its suit (for it paid the value of the goods to the trustees of the vendee) does not estop it to claim out of the vendee's

assets, payment of the note given by the purchaser for the price of the fertilizers sold. The appellant is consequently entitled to participate with the other creditors of the Waring Manufacturing Company in the funds which the trustees hold for distribution. We therefore reverse the order appealed from.

> *Order reversed with costs above and below and cause remanded for further proceedings.*

(Decided December 6th, 1895.)