J. McD. TRIMBLE, Defendant in Error, v. W. J WOLLMAN, Defendant in Error; UNION NATIONAL BANK, Plaintiff in Error.

Kansas City Court of Appeals, May 31, 1897.

1. **Corporations:** TRANSFER OF STOCK: FORGERY: LIABILITY. A corporation incurs an alternative liability to an original stockholder for a conversion of his stock or to a *bona fide* subtransferee who has purchased the shares on the faith of the new certificate, but does not incur any liability to the first purchaser of the forged certificate because it was his duty primarily to see that the transfer to him was genuine.

2. ———: ———: NEW REGISTRY: ESTOPPEL. The corporation is liable to a transferee where he parts with value on the faith of the new registry under circumstances which give rise to an estoppel, but there must be no active intervention by word or act on the part of such transferee.

3. **Witnesses:** INTEREST: CREDIT: INFAMY: GUILT. Mere interest should not undermine the credit due a witness to the same extent as moral infamy and a witness, though not legally infamous until sentenced, is morally infamous when he admits his guilt, and moral infamy necessarily destroys the credit of his testimony to a great extent; and a witness without interest and uncontradicted by the circumstances seems entitled to more credit than a deeply interested witness.

4. **Corporations:** TRANSFER OF STOCK: TRANSFEREE: ESTOPPEL. A transferee who has stock transferred at his request and tells the transfer officer that he had bought the stock at the highest market value can not invoke estoppel against the bank on the faith of the new certificate.

5. **Equity:** COMPLETE DISPOSITION: AMENDMENT OF PLEADINGS: APPELLATE PRACTICE. Where equity acquires jurisdiction it will do complete equity between the parties and where a reversal is necessary the appellate court will direct such an amendment of the pleadings that would warrant a decree in conformity with equity and good conscience.

6. ————: ELECTION: JURISDICTION OF JUSTICE. Where a justice of the peace without jurisdiction makes an order on a party to interplead for attached money and the party declines to do so, he is not thereby precluded from prosecuting another remedy. An election is in the nature of an estoppel and unless shown by final record it must contain the elements of an estoppel *in pais;* and in this case there was no election.

7. **Conversion:** EXTENT OF LIABILITY. In an action for conversion the defendant may only be liable for such amount as may have been converted by his direct action and not such as was converted by the action of another.

*Error to the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED (*with directions*).

*H. L. McCune* for plaintiff in error.

(1) If Wollman and the bank were equally free from fault, the fact that the new certificate was obtained from the bank without consideration, through mistake, would entitle the bank to recover from Wollman its damages resulting from the issuance of the new

certificate. *Brown, Lancaster & Co. v. Ins. Co.*, 42 Md. 384. (2) Where a ·person presents a forged power of attorney to transfer stock to a corporation and the corporation upon the faith of it issues to him a new certificate, he is liable to the corporation for damages resulting to it from such issue of stock, including the costs of a suit brought against the corporation by the person whose name was forged, to compel an issue of new stock to take the place of that transferred. *R'y v. Richardson*, 135 Mass. 473. (3) Wollman, by presenting the forged power of attorney to the bank, impliedly represented Trimble's signature thereto to be genuine, and the bank is not liable to him upon a new certificate issued on account of such representations. *Hambleton & Co. v. R'y*, 44 Md. 551; *R'y v. Richardson, supra; Brown, Lancaster & Co. v. Ins. Co.*, 42 Md. 384; *Hilyard v. South Sea Co.*, 2 Peere Williams Reports, p. 76; *Simm v. Telegraph Co.*, 5 Q. B. D. 188; 26 American Law Review, p. 809; Cook on Stockholders, secs. 364 and 401. (4) To entitle the holder of money obtained by mistake upon a forged instrument to hold it against the person making the payment, he must be able to show that he put the whole responsibility upon the drawee and relied on him to decide. If the failure to detect the forgery can be traced to the holder's disregard of duty in omitting to exercise some precaution which he had undertaken to perform, he can not retain the money. And this is true even of a check or bill of exchange drawn upon a bank. *Ellis v. Ins. & Trust Co.*, 4 Ohio St. 628; *Bank v. Bangs*, 106 Mass. 441; *Bank v. Bank*, 151 Mass. 280; Morse on Banks and Banking [3 Ed.], sec. 466.

*Gage, Ladd & Small* for plaintiff in error.

·(1) The decree of the court below, so far as it determined the controversy between the plaintiff Trim-

ble and the bank, and for the cancellation of Woll-
man's stock, was correct. He was the owner of the
shares and his title could only be divested by his vol-
untary act or by process of law. Neither of these
intervened to produce that result. Therefore, his rein-
statement as a stockholder was a foregone conclusion.
(2) This judgment proceeded upon two supposed
rules of law: *First.* That the bank was conclusively
presumed to know the signature of its stockholder
Trimble; and, *second,* that having issued a new cer-
tificate to Wollman, upon the faith of which act he
paid his money, it is, upon the principle of estoppel,
liable to make good his loss, when the shares are taken
from him and the title to them revested in the true
owner. As to the first proposition, we deny the exist-
ence of any such rule. As to the other, we contend
that Wollman's relations to the parties and his conduct
in the whole transaction preclude him from invoking
the principle of estoppel in his favor against the bank.
The two theories in their attempted application to the
facts of this case are so interwoven that it is not easy
to separate their discussion, and the authorities in sup-
port of the position of the plaintiff in error as respects
them are therefore cited together. *Bank v. Bank,* 151
Mass. 280; *Bank v. Bangs,* 106 Mass. 441; *Ellis v. Ins.
& Trust Co.,* 4 Ohio St. 628; *Wilkinson v. Johnson,*
3 Barn & Cress, 428; *Bank v. Ricker,* 71 Ill. 439;
*Rouvant v. Bank,* 63 Tex. 611; Dan. Neg. Inst. [3 Ed.],
sec. 1657; Morse on Banking [3 Ed.], secs. 464, 466;
*Bank v. Bank,* 22 Neb. 769; Cook on Stockholders,
[3 Ed.], secs. 364, 401; *Brown, Lancaster & Co. v. Ins.
Co.,* 42 Md. 384; *Hambleton v. R. R.,* 44 Md. 551;
*R. R. v. Richardson,* 135 Mass. 473; *Hilyard v. South
Sea Co.,* 2 Peere Williams, Rep. 76; *Simm v. Telegraph
Co.,* L. R. 5, Q. B. Div. 188; Hon. Seymour D. Thomp-
son in 26 Am. Law Review, 809. (3) The case is at

least one for the application of the salutary and well established doctrine, that where one of two equally innocent parties must suffer for the wrongdoing of a third, the one who has put it in the power of the third to do the injury must bear the loss. Tested by this standard and regarding his conduct from the point of view most favorable to him, the judgment in favor of the respondent Wollman can not be permitted to stand. (4) Wollman presented and delivered to the bank a certificate upon which was a forged transfer. In exchange for it he received from the bank a new certificate which recognized him as the owner of the shares. That which he gave to the bank was worthless; he received, without any consideration for it, a thing of value which, upon every principle of law, justice and fair dealing, he was bound to return to the bank.

*Warner, Dean, Gibson & McLeod,* and *Karnes, Holmes & Krauthoff* for defendant in error, William J. Wollman.

(1) This case, in respect of the principle which must govern its determination and of the essential facts upon which the appellant relies, is controlled by the elaborately argued and well considered case of *Bank v. Bank,* 107 Mo. 402. Precisely the same authorities and line of argument invoked by the appellant here were urged upon the supreme court in that case. The abstract of the briefs which appears in the report shows that the cases of *Bank v. Bank,* 151 Mass. 280; *Bank v. Bangs,* 106 Mass. 441; *Ellis v. Ins. Co.,* 4 Ohio St. 628; *Wilkinson v. Johnson,* 3 B. & C. 428; *Bank v. Ricker,* 71 Ill. 439; *Rouvant v. Bank,* 63 Tex. 611; and *Bank v. State Bank,* 22 Neb. 769; and also Daniel on Negotiable Instruments, were pressed upon the attention of the supreme court. See 107 Mo. 403, 404. (2) The

rights of a vendee of such property can not be impeached by any proof of negligence; fraud alone can have that effect. *Knox v. Eden Musee Co.*, 25 N. Y. Supp. 164, 171. For all the purposes of this cause, the rule thus announced is fully applicable. Certificates of stock "although neither in form or character negotiable paper, approximate to it as nearly as practicable." *Bank v. Durfee*, 118 Mo. 431, 446; *Trust & Savings Co. v. Lumber Co.*, 118 Mo. 457, 458; *Bank v. R'y*, 137 N. Y. 231, 232; 2 Thomp. Corp., secs. 2493, 2556, 2572, 2575; *Knox v. Eden Musee Co.*, 26 N. Y. Supp. 164, 169, 482, 484, 487; *Pratt v. Mfg. Co.*, 123 Mass. 110; *In re Bahia R'y*, L. R. 3 Q. B. 584, 596, 597, 598; *Caulkins v. Gaslight Co.*, 85 Tenn. 683, 694, 695; *Tompkinson v. Balkins Con. Co.* (1891), 2 Q. B. 614, 623 (Since affirmed by House of Lords, *post*——); *Bank v. Field*, 126 Mass. 345; *Bank v. Baltimore*, 63 Md. 6; *Ashby v. Blackwell*, 2 Eden, Ch. 299, 302, 303; *Dalton v. R'y*, 12 C. B. 458 (74 Eng. Com. Law, 457); *Hart v. Mining Co.*, L. R. 5 Exch. 111, 115; *Davis v. Bank*, 2 Bing. 393, 404, 405; *Balkins Consol. Co. v. Tompkinson*, 1 App. C. Law Reports (1893), 178; *Telegraph Co. v. Davenport*, 97 U. S. 369, 371; *Jarvis v. Manhattan Beach Co.*, 53 Hun. 362; *Ins. Co. v. R'y*, 26 N. Y. Supp. 545; *Appeal of Kisterbock*, 127 Pa. St. 601. (3) The cases cited by appellant are not in point. As already stated, they are to a very great extent the ones relied upon by counsel for the appellant in *Bank v. Bank*, 107 Mo. 402, and declined to be followed by the supreme court in that case. The other cases are instances of where the party paid for certificates of stock and after the payment caused them to be transferred. The distinction between these is plain. Counsel for appellant have a great deal to say about Mr. Wollman's conduct, and judge his actions largely by hind sight. "Wisdom after the event is easy." *Flan-

*agan v. R'y*, 29 Atl. Rep. (Pa. 1894) 743. "Defendant's conduct must be judged from the standpoint it occupied during these transactions, and from the circumstances as they presented themselves to it at that time. We know much now that he (Wollman) did not know then." *Bank v. Bank*, 107 Mo. 402, 411. "Representations as to matters which are merely collateral and do not constitute essential elements of the contract into which the plaintiff is induced to enter, are not sufficient." *Hedden v. Griffin*, 136 Mass. 229; *Phelan v. Moss*, 67 Pa. St. 59; *Bailey v. Smith*, 14 Ohio St. 402. (4) The rule is clear that "a party who judicially demands the proceeds of a sale thereby admits its legality, and is estopped from impeaching it." 2 Herm. Estoppel, pp. 1199, 1205, 1219, 1220. (5) An essential element of the bank avoiding the consequences of its act in issuing the new certificate to Wollman was for the bank to refuse to claim the money found on Breese's person, or after it came into the possession of the bank, to tender it to Mr. Wollman. This tender was a prerequisite to its right of rescission. *Cahn v. Reid*, 18 Mo. App. 115, 123; *Alexander v. R'y*, 54 Mo. App. 66, 70; *Retzer v. Packing Co.*, 58 Mo. App. 264, 270; *Taylor v. Short*, 107 Mo. 384; *Bank v. Lumber Co.*, 54 Mo. App. 327; s. c., 60 Mo. App. 255; *Fischer v. Siekmann*, 125 Mo. 165, 180; *Clyburn v. McLaughlin*, 106 Mo. 521, 525; *McClanahan v. West*, 100 Mo. 309, 323; *Nanson v. Jacobs*, 93 Mo. 331; *Austin v. Loring*, 63 Mo. 19, 22; *Watson v. Bigelow*, 47 Mo. 413; *Davis v. Krum*, 12 Mo. App. 279, 287; *Telegraph Co. v. Davenport*, 97 U. S. 369, 373. (6) It is clear, then, that by claiming the money arising from the sale of the stock and appropriating it in payment of the "indebtedness" of Breese, the bank, at least, fully ratified the transaction. Counsel for the bank seek to avoid the effect of these acts of the bank, by claiming: *First*

That Mr. Wollman's rights to the money were adjudicated in garnishment proceedings before a justice of the peace; and, *second*, that Mr. Wollman, by refusing to claim the money, is estopped to claim the stock or its value. The rights of the parties, Trimble, Wollman, and the bank, with respect to the money and the stock, can only be determined in a proceeding in equity. This is conceded by all the parties in interest. Mr. Trimble appealed to a court of equity, and the bank "averred a readiness to abide by the judgment of the court." This being so, the garnishment proceedings before the justice were, as to Mr. Wollman, void for want of jurisdiction. "Justices of the peace have no equity jurisdiction. They are solely creatures of the statute, and their jurisdiction is at law." *Enlow v. Newland*, 22 Mo. App. 581, 584; *Lackland v. Garesche*, 56 Mo. 267, 270, 271; *Atwood v. Hale*, 17 Mo. App. 81, 88; *Sheedy v. Bank*, 62 Mo. 17, 25; *Beckham v. Tootle*, 19 Mo. App. 596, 603; R. S. 1889, sec. 5242; *Wolff v. Vette*, 17 Mo. App. 36, 37; *Brown v. Gummersell*, 30 Mo. App. 341, 344; *Burgert v. Borchert*, 59 Mo. 80, 85; *Wurmser v. Frederick*, 62 Mo. App. 634; *Bales v. Perry*, 51 Mo. 449, 453; *Blodgett v. Perry*, 97 Mo. 263, 273.

*Frank Hagerman* for respondent Trimble.

(1) The decree in favor of Trimble must be affirmed as against Wollman because the latter has taken no steps to reverse the same, and it must be affirmed as against the bank because it has admitted that such decree, so far as concerns Trimble, is correct. (2) Wollman got no title to the stock by reason of the transaction with Breese because he bought it from a thief and not from the owner. 1 Cook on Stockholders [3 Ed.], sec. 368; *Swim v. Wilson*, 27 Pac. Rep.

33. There was a theft of the certificate and a forgery of the indorsement. Authority is not needed to convince the court that Trimble's title could not be transferred by theft and forgery. (3) There is no room for any inference from any fact that Trimble ever did anything to ratify the sale of the stock, and as a matter of fact he never did ratify the same. The stock was his individual property; the firm of Trimble & Braley had no interest therein.

R. E. ROMBAUER (*Special Judge*).—On the third of July, 1891, the plaintiff was the owner of ten shares of stock of the par value of $1,000 of the defendant bank. He was also a depositor in said bank. He kept his stock certificate in a safe in his office. One Breese, who was plaintiff's clerk at the time, stole this certificate from plaintiff's safe, caused plaintiff's name to be forged to the blank assignment thereon and sold the certificate to the defendant Wollman, a stock broker, for $1,000, under circumstances hereinafter more fully stated. Breese fraudulently pretended to act for the plaintiff in this transaction. Wollman refused to consummate the purchase unless the certificate was first surrendered to the bank, and a new certificate was issued in his, Wollman's, name. Breese and Wollman thereupon went to the bank, where either Wollman, or Breese, pretending to act by plaintiff's authority surrendered the certificate to the bank and obtained a new certificate in Wollman's name. Wollman thereupon delivered to Breese in payment of the stock his check on another bank for $1,000 payable to the order of plaintiff. Breese caused plaintiff's name to be forged on the reverse side of this check, and also caused plaintiff's signature to be forged to a letter requesting Wollman to aid him in cashing the check. Wollman thereupon went with

Breese to his own bank and aided him in cashing the check.· All these forgeries were very skillfully executed by transferring plaintiff's genuine signature by means of a tissue paper tracing to the various documents in a manner designed to avoid the detection of the forgery even by close scrutiny. As soon as Breese obtained the money he fled, but was captured within a few days in Charleston, Missouri, with $665, part proceeds of Wollman's check, upon his person. This money the plaintiff and his partner deposited as a special fund for the benefit of whomsoever should be entitled thereto. The bank which had claims against Breese for money fraudulently obtained from it on other forgeries, attached this money by garnishments. Upon these garnishments such proceedings were had that the bank obtained judgments, and the residue of the money after deducting certain expenses for securing it and also the amount of $30 due the plaintiff from Breese, was paid over to the bank. The amount thus paid over amounted to $487.16, less costs, or to a net amount of $367.84. Besides this amount the sum of $100 given by Breese to a courtesan in Kansas City was also recovered, and attached by the bank. Touching the foregoing facts there is no controversy.

The plaintiff upon discovering the loss of his certificate, and the manner in which it was brought about, filed this bill in equity against the bank and Wollman. The bill states the larceny of plaintiff's certificate, its fraudulent surrender to the bank and the issue of the new certificate to Wollman. It prays for the cancellation of the second certificate, and for a re-issue of plaintiff's certificate to himself. The bank answered averring its own good faith in the transaction, and concluding that it did not know whether under the circumstances Wollman or the plaintiff was entitled to the stock, but that so far as it was

PLEADINGS.

concerned it was ready and willing to cancel the second certificate, and to issue a new one to plaintiff, or to any person whom the court might find to be the owner of the shares. The answer and cross bill of Wollman states in substance that he bought the stock on condition that a new certificate should be issued to him. That the plaintiff was not only a stockholder but also a depositor in the bank, that the latter was therefore presumed to know his signature, and that he did not pay to Breese the $1,000 until after the bank had issued a new certificate to him (Wollman) and had accepted the surrender from Breese, whom the bank well knew, while he was a stranger to him (Wollman). The answer further states, that the plaintiff with a full knowledge of Breese's transactions, thereafter received from him $800 of the identical money which Wollman had paid for the stock to Breese as plaintiff's agent. The answer then states that the defendant bank instituted a number of attachment suits against Breese, and garnished the plaintiff from whom it received the sum of about $700, although the bank, before it brought the suits against Breese, and before it garnished Trimble, and when it obtained the judgment aforesaid and collected the same, had full knowledge that all the money in the hands of Trimble was part of the identical money paid by the defendant Wollman to Breese for the shares of stock. The answer prayed that the defendant Wollman might be decreed to be the true and lawful owner of such shares, and for other and further relief.

To this answer and cross bill the bank filed a reply, the reply stated in substance that the old certificate was in the possession of Wollman prior to its surrender; that he brought it to the bank and represented to its officers that he had bought it for its full market value of $112 per share, whereas he had paid

only the par value thereof; that this was done for the purpose of deceiving the bank officers and throwing them off their guard; that if they had known that Wollman had paid only par for the shares, their suspicions would have been aroused and they would not have canceled the certificate and that hence Wollman was estopped from holding the bank responsible for the loss caused by his own negligence. The reply further stated that after the bank had attached the money in the plaintiff's hands, Wollman was notified to assert his claim thereto if he had any, but that he persistently refused to assert any claim to it, in consequence whereof the magistrate adjudged that the money belonged to Breese, and rendered judgment accordingly, which judgment resulted in the bank receiving $367.80 of said money and no more. The reply further averred that the bank did not know whether the money thus attached was the money of Wollman or the money of Breese and that the proceedings touching the attachment of the money taken from the courtesan were still pending.

On the issue thus framed, the trial court heard evidence and decreed that the cancellation by the bank of the plaintiff's certificate be vacated; that the certificate DECREE. issued by the bank to Wollman be canceled; that the plaintiff recover from the bank certain dividends declared on the stock, and Wollman recover of the bank the sum of $1,138.05, being the amount paid for the stock with interest. The court also adjudged all the costs against the bank. The bank thereupon sued out a writ of error, and assigns for error that the decree is unsupported by the evidence and contrary to equity.

An eminent text writer states the law governing the rights of parties where shares in corporations are transferred under forged powers, to be as follows: The

corporation incurs an alternative liability to the original stockholder for a conversion of his shares, or to a *bona fide* subtransferee who has purchased the shares on the faith of the new certificate, **CORPORATIONS: transfer of stock: forgery: liability.** *but it does not incur a liability to the first purchaser of the forged certificate* because it was his duty primarily to see that the transfer to him was genuine. In such a case the rightful stockholder may maintain a bill in equity to compel the corporation to issue to him a new certificate and to pay to him the dividends accrued on his shares. Thompson on Corporations, secs. 2555–2567. This statement of the law is in conformity with the decisions in England and America, and as far as the rights of the first shareholder are concerned has been sanctioned in *Telegraph Company v. Davenport*, 97 U. S. 369. The judgment rendered herein, therefore, as far as plaintiff's rights are concerned, is the only judgment that could be rendered, and the plaintiff in error has no just cause to complain of the same.

On the other hand the judgment, so far as Wollman is concerned, would be clearly wrong, provided he was the purchaser of the forged certificate, for two reasons: *First*, because he would have **—: —: new registry: estoppel.** parted with his money on the faith of the forged certificate, and not on the faith of the issue of the new certificate, and hence the issue of the new certificate would not be the primary cause of his loss, and, *next*, because, as the author properly says, it would have been Wollman's duty to see that the transfer to him was genuine. Another text writer of authority says: Such a registered transferee has a right of action against the corporation by reason of its rescission of his registry, *although the rule may be different if he purchased by reason of the fact that he was allowed such registry on the corporate books*. Morse on

Banking, sec. 364. In the case last stated the corporation in effect declares to the transferee, I have been duly authorized to issue these shares to you, and if the transferee parts with his money on faith of this implied declaration, the case is governed by the ordinary rules of estoppel, and the corporation can not as against the transferee deny its own authority, because where one by his word or conduct willfully causes another to believe in the existence of a certain state of facts, and induced him to act on that belief, or to alter his own previous position the former is concluded from averring against the latter a different state of things as existing at the time. *Pickard v. Sears et al.*, 6 Ad. & Ell., *loc. cit.* 474.

It will thus be seen that in all cases where such a question arose the liability of the corporation was not made dependent on the fact whether the person in whose favor the registry of the shares was changed was a transferee or a subtransferee, but on the question whether he parted with value on the faith of the new registry, under circumstances which gave rise to an estoppel on part of the corporation. The cases of *Balkins Cons. Co. v. Tompkinson*, 1 App. C. Law Rep. (1893) 396; *Hart v. Frontino, etc., Co.*, 5 Ex. Law Rep. 111; and *In Re The Bahia, etc., R. Co.*, 3 Q. B. Law Rep. (1868) 584, in England, and the case of *Metropolitan Savings Bank v. Mayor, etc., of Baltimore*, 63 Md. 6, in the United States, furnish apt illustrations of the rule and its limitations.

In the case last mentioned the plaintiff had advanced $3,500 on a certificate of stock, the indorsement whereon was forged. Upon a request to advance $6,000 more the plaintiff agreed to do so provided a new certificate was made out in its own name for $10,000. The new certificate was thereupon thus made out by the corporation, at the request of the forger, *but with-*

*out any active intervention by word or act on part of the plaintiff*, and the plaintiff on faith of the new certificate advanced the additional $6,000. It was held that the plaintiff was entitled to recover from the corporation the $6,000 advanced on the faith of the new certificate, but not the $3,500 previously advanced. The case would be identical with the one at bar but for the element which is contained in the sentence italicized above. As the case seems to be decided on correct lines, it would be decisive of the case at bar but for the element mentioned.

It thus becomes important to determine from the evidence whether Wollman, in the case at bar, has by his own acts and conduct deprived himself of the benefit of the estoppel which he otherwise would have been entitled to invoke against the bank. If the proper inference from the evidence is that the new certificate was issued by the bank at his request, and that the officers of the bank were justified by his conduct to believe that the request came from him, he can not invoke an estoppel because in that event it was his duty primarily to determine the genuineness of the plaintiff's signature. If, on the other hand, Wollman's conduct in the matter was merely passive and the new certificate was not issued at his request but at the request of Breese purporting to act as plaintiff's agent, then the duty to determine the genuineness of plaintiff's signature rested primarily with the bank, and it is estopped as against Wollman to dispute the validity of the new certificate. The evidence on this subject is conflicting. As far as there is any conflict in the evidence between that of Wollman and Breese that conflict must be solved in favor of Wollman. Mere interest should not be permitted to undermine the credit due to a witness to the same extent as moral infamy. Breese was not

WITNESSES: interest: credit: infamy: guilt.

legally infamous until after sentence, hence he was a competent witness, but he was admittedly morally infamous by his plea of guilty, and that moral infamy necessarily destroyed the *credit* due to his testimony to a great extent. On the other hand the conflict between the testimony of Wollman and Lewis, the cashier of the bank, must be solved in favor of the latter, because the former is a party and highly interested witness, while the latter, as far as shown, has no pecuniary interest in the suit. There is nothing in the surrounding circumstances which makes the evidence of Lewis improbable.

All the evidence concedes that Wollman and Breese went jointly to the bank to have the transfer effected. What passed at the bank after they came there is testified to by Lewis as follows: "It was after dinner; about, I should say, 2 o'clock or between 2 and 3. Mr. Wollman came into the bank with Breese. Mr. Wollman came to my desk and he says, Mr. Lewis, I am a partner here now, and I want you to transfer this stock, and he took it out of his pocket and handed it to me like that. I asked him if he could wait a little while, and get the stock when he came to see about the exchange. He says: No, I am in a hurry and I want it now. I said: Very well, if you will wait a moment I will transfer it. So I went back to fill it out. I took the stock book and issued the new stock, and gave it to Mr. Beals and Mr. Beals took it back to his desk and signed it. I put the seal of the bank on after he signed it, and filled it up and handed it to Mr. Wollman."

"*Q.* Did you have any conversation with Mr. Wollman at any time in regard to the price he paid for the stock? *A.* I asked him and he said 112."

"*Q.* What did you say to him? *A.* I asked him the price of the stock and he said 112. Breese came

up and I said, 'Dick, what did the judge get for the stock?' and he said 112.''

"*Q.*  To whom did you refer when you said the judge?  *A.* Judge Trimble.''

On cross-examination the witness stated that he examined the signature on the certificate with the same care as usual, but knowing Wollman as well as he did, and the stock coming through the channel it did, his suspicions were not aroused.

Wollman had at that time paid nothing for the stock, but had bargained to buy the stock from Breese at par.  The stock was at that time selling from 105 to 108 and was quoted at 112.  He was of course under no obligation to disclose at what figure he was buying the stock, but if he chose to give that information it was his duty to speak the truth.  Finding that the stock was transferred at his request, that he told the cashier that he had bought the stock and had paid for it, and had paid for it at its highest market value, he can not now invoke an estoppel against the bank on the theory that he bought the stock on the faith of the new certificate. The bank was justified by Wollman's acts and conduct to treat the transaction as one where the apparent transferee asserted the genuineness of the signature, by claiming rights under the transfer and under such circumstances was under no duty to Wollman to discover a forgery which, as above stated, was a perfect imitation of the genuine signature.  The judgment, therefore, in favor of Wollman against the bank for the amount lost by him in the transaction can not be supported.

*CORPORATIONS: transfer of stock: transferee: estoppel.*

Counsel for Wollman claim that if he is entitled to no relief against the bank for the recovery of the money he parted with in the purchase, he should obtain relief to the extent of his money having subsequently been

converted by the bank to its own use.   Counsel suggest
that even if the judgment is reversed as to Wollman it
should be reversed with directions to afford him that
relief.   In reply to this argument counsel for the bank
say that Wollman having insisted throughout that the
issue of the certificate to him was a valid issue, and
having throughout disclaimed any title or interest in
the money which he had paid on account of the certifi-
cate, is not now in a position to claim that the bank
illegally converted his money.   In brief, that Wollman
is concluded by his election.   Counsel for the bank
further assert that such relief would not be warranted
under any of the allegations in Wollman's cross bill,
and that the necessary parties for making such a dis-
position of the case are not before the court.

This is a case in equity, and if a complete disposi-
tion can be made of the entire controversy between the
parties, which will do complete equity
between them, it is the duty of the court
to do so.   The fact that the pleadings do
not warrant it, is no obstacle, since the
decree must necessarily be reversed, and may be reversed
with directions to permit such an amendment of the
pleadings as would warrant a decree in conformity
with equity and good conscience, provided always that
Wollman is not concluded by his election; that the
necessary parties for making a complete disposition of
the case are before the court, and that the evidence
warrants such a disposition.

As hereinabove stated, when Breese was arrested
$665 in money were found on his person.   This money
was attached by the bank as soon as it reached Kansas
City.   That was part of the identical money obtained
by Breese on Wollman's check, and it appeared that

EQUITY: complete
disposition:
amendment of
pleadings: ap-
pellate practice.

the bank knew this to be the fact shortly

—:·election:
jurisdiction
of justice.

after the attachment. The additional sum of $100 recovered from the courtesan and constituting part of the money drawn on Wollman's check by Breese was also attached by the bank. After· the money was thus attached, Wollman was· asked whether he claimed it as his money, and replied he claimed that the stock was his and that he did not then set up any claim to the money. It is but just, however, to him to state that he offered to take the money and surrender the stock certificate provided the loss resulting from the difference between what he paid and the amount recovered would be borne in equal proportions between himself, the plaintiff, and the bank. To this extent he was willing to do equity, but the bank was not. The bank claimed the right to proceed against the money, without admitting its liability for the stock. The position of both parties was inconsistent; that of Wollman in claiming that part of the loss should fall on the plaintiff, who was conceded to be innocent, and on the bank who is now adjudged to be innocent; that of the bank, however, was not only inconsistent but inequitable, because it insisted that Wollman should lose both his stock and money.

The plaintiff, after he was garnished, set up in his answer the circumstances under which he came into possession of the money, and invoked the protection of the court. The justice ordered Wollman to interplead for the money, which Wollman declined to do. As the order of the justice was not one within the jurisdiction of the court, Wollman can not of course be precluded by not availing himself of it, unless under the circumstances he can be held to have made his *conclusive* election by his acts. On this branch of the case I find that Wollman can not be debarred of relief on the ground that his acts manifest a conclusive elec-

tion.    Although there is some diversity of opinion on the subject as to what will amount to such an election, the rule in this state is settled that an election is in the nature of an estoppel, and unless it is shown by the record of a final judgment, or contains the elements of an estoppel *in pais* owing to intervening rights, it will not conclude the party against whom it is invoked. *Anchor Milling Company v. Walsh*, 20 Mo. App. 106; *Lapp v. Ryan*, 23 Mo. App. 436; *Enterprise Soap Company v. Sayres*, 51 Mo. App. 310; *Johnson-Brinkman Co. v. Central Bank*, 116 Mo. 558; *Johnson-Brinkman Co. v. Railroad*, 126 Mo. 344. Other courts of high authority have taken the same view. *Boston Miner Co. v. Stokes*, 82 Md. 50; *Wiggins Ferry Co. v. Railway*, 142 U. S. 396, 415. Other cases draw the distinction between election and mistake of remedies, and hold that an attempt to avail himself of a remedy which he never had can not be treated as an election by any party.

The further inquiry, however, necessarily arises: To what extent may Wollman hold the bank liable for the conversion of the funds? Is it to the extent of the entire fund attached or only to the extent of as much of the fund as was converted by the action of the bank to its own use? For so much of the fund as was turned over to the plaintiff the bank clearly can not be held responsible, nor can Wollman, as to that, have any relief in this action. That payment is not traceable to any direct action on the part of the bank. For the residue, however, amounting to the sum of $487.16, there is no reason why Wollman should not be entitled to recover. The conversion of that amount is the direct result of the action of the bank, and the funds thus converted are unquestionably the funds of Wollman.

All the parties necessary to a final decree are before the court. The attachment for the $100 is still

CONVERSION: extent of liability.

Trimble v. Bank.

pending, and no reason is apparent why Wollman should not interplead in that suit even now, and obtain the money which is clearly his. Or, if the statute of limitations is likely to be interposed to such a plea, there is no reason why the garnishees should not amend their answer reciting the facts and stating that the money is the money of Wollman. Hence no disposition need be made of that action. The judgment will be reversed and the cause remanded with directions to the lower court to permit the defendant Wollman so to amend his cross bill as to pray for the relief herein indicated, and upon his cross bill being thus amended to enter judgment against the bank in his favor for the sum of $487.16, with interest from October 6, 1891. Warrant for such an amendment is found in *Hardin v. Boyd*, 113 U. S. 756, and *Wiggins Ferry Co. v. Railroad*, 142 U. S., on p. 415. As this is a suit in equity wherein the adjudication of the costs is within the discretion of the court it is further ordered that the entire costs of this proceeding be adjudged against Wollman and the bank, to be borne by them share and share alike.

This disposition of the case is made with the concurrence of Judge SMITH, who agrees to all parts of the opinion. Judge GILL concurs in the first part thereof, which disposes of the main controversy, but dissents from that part which determines Wollman's equities in this proceeding.