In the Matter of Charles Howard
BENTZEL, Bankrupt.
No. 10580.

United States District Court
D. Maryland.
April 23, 1958.

Paul Martin, Smalkin, Hessian, Martin & Taylor, Towson, Md., for petitioners.

Charles D. Harris, Baltimore, Md., for Herbert H. Hubbard, trustee in bankruptcy.

**THOMSEN, Chief Judge.**

Petitioners, G. Thomas Zepp and G. Thomas Zepp, Jr., trading as Arcadia Garage, seek review of an order of the referee denying their petition to rescind the sale of a 1955 Chrysler Imperial automobile made to C. H. Bentzel in September, 1955, less than three months before he filed his voluntary petition in bankruptcy. The referee found the evidence insufficient to establish that Bentzel had obtained possession of the automobile from petitioners by actual fraud or that the automobile was sold to him on credit at a time when he was insolvent and had no reasonable expectation of being able to pay the balance of the purchase price in ninety days, as he promised. The referee also held that the petitioners were precluded from rescinding the sale, since they had previously elected to affirm the transaction by asserting in these proceedings an alleged lien arising out of the sale.

Bentzel was a certified public accountant, who had been employed by several firms as a comptroller. Petitioners had dealt with him before, having sold him an automobile in 1953. On that occasion Bentzel had given them a ninety day note, which had been renewed once or twice and paid off within a year. In September, 1955, Bentzel owned a 1954 Mercury, on which he still owed $2,700 to a lienor. He made a deal with petitioners whereby he traded in the Mercury, valued at $3,522, on the purchase of a 1955 Imperial, valued at $5,222. The balance of $4,400 above the agreed value of his equity in the Mercury was represented by a note for $4,400, signed by Bentzel and his wife, which Bentzel told petitioners would be paid in ninety days. In view of Bentzel's good reputation and their previous satisfactory dealings with him, petitioners did not obtain a credit report, did not ask Bentzel any questions about his financial position, and did not have him sign a conditional sale agree-

ment or a chattel mortgage. They did retain physical possession of the certificate of title to the Imperial which was issued in Bentzel's name, and caused a lien for $4,400 to be noted on the certificate.

Although Bentzel had made about $8,000 during 1954, he was out of a job in the summer of 1955 and owed about $3,000 in addition to the balance due on the Mercury and a mortgage of $11,000 on a house which he and his wife owned as tenants by the entireties. The house had cost them $10,000, and they had spent $15,000 improving it. In 1955 it was leased, with an option in the lessees to purchase it for $16,000. Bentzel's wife may have been jointly liable on some of the other debts besides the mortgage, and there may have been some additional debts due at that time which petitioners did not prove. Petitioners argue that Bentzel should have known that he was hopelessly insolvent when he made the deal for the Imperial, and that his promise to pay the $4,400 note in ninety days constituted a fraudulent misrepresentation.

On or about December 2, 1955, petitioners learned of Bentzel's bankruptcy, and he allowed them to repossess the Imperial. The trustee in bankruptcy thereupon filed a petition for turn-over. Petitioners filed an answer, alleging that they had a valid lien recorded on the title. On or about March 21, 1956, the trustee and petitioners agreed that the car should be sold by the trustee and the proceeds held pending the referee's decision on the validity of the lien. In June, 1956, the referee held that the notation of lien on the title was not sufficient to constitute a lien in the absence of a properly recorded mortgage or conditional contract of sale. Petitioners did not seek a review of that decision. In the meantime, they had filed a secured claim in the amount of $4,466, in which they contended that the sale had been conditional and that under the contract or agreement of the parties possession of the vehicle was to be returned to petitioners in the event of nonpayment.

On March 18, 1957, petitioners for the first time alleged that Bentzel had obtained the automobile, while insolvent, by false and fraudulent inducements without any expectation of making payment therefor. Petitioners had long since disposed of the Mercury which they had taken in part payment for the Imperial; they did not offer to restore to the trustee its agreed equity value or any part of the proceeds of its sale.

■ I. If a person who is insolvent purchases property on credit from another, with an intention not to pay for it or with no reasonable expectation of being able to pay, and induces the sale by false representations concerning his financial ability, upon which the seller relies, or by fraudulently concealing his insolvent condition, which would have prevented the sale if it had been known to the seller, the seller may elect (a) to treat the purchaser as a debtor and enforce any and all remedies under the contract, or (b) to rescind the transaction and recover the property from the purchaser or from the purchaser's trustee in bankruptcy, unless an innocent third party has acquired an interest in the property. 1 Black, Rescission (2d ed.) sec. 29; 4 Collier, Bankruptcy (14th ed.) sec. 60.18, 70.41; Donaldson v. Farwell, 93 U.S. 631, 23 L.Ed. 993; Manly v. Ohio Shoe Co., 4 Cir., 25 F.2d 384, 59 A.L.R. 413; In re General Lumber Products Co., D.C.D.Md., 21 F.2d 979; Edelhoff v. Horner-Miller Mfg. Co., 86 Md. 595, 613, 39 A. 314.

■ Various inferences might be drawn from the evidence in the instant case, but it supports the conclusion of the referee that petitioners have not met the burden resting on them to show that Bentzel had obtained the automobile by actual fraud or that the automobile had been sold to him on credit at a time when he was so hopelessly insolvent as to have no reasonable expectation of being able to pay the $4,400 note when it matured.

■ II. Since rescission and pursuit of remedies on the contract are inconsistent, the seller is obliged to elect be-

tween them; he may not claim both on the contract and on a right to rescind it. "In a transaction which is voidable by one of the parties for fraud, mistake, or duress, such party has an election to affirm the transaction, and if he so elects he loses his power of avoidance." Restatement of Restitution, sec. 144(b). See also Operators' Piano Co. v. First Wisconsin Trust Co., 7 Cir., 283 F. 904; Collier, sec. 60.18, p. 822; Restatement of Contracts, sec. 381.

■ Although the mere filing of a claim in bankruptcy has been held to be an election which bars rescission, Collier, sec. 70.41, p. 1214, the question whether the defrauded party has lost his right to rescind because of conduct inconsistent with disaffirmance should be determined according to the applicable state law. Albert v. Martin Custom Made Tires Corp., 2 Cir., 116 F.2d 962. The Court of Appeals of Maryland has held that the election by a party of one of two remedies open to him, and a decision thereon by a competent tribunal, precludes a resort to the other inconsistent remedy. Bolton Mines Co. v. Stokes, 82 Md. 50, 33 A. 491, 31 L.R.A. 789; Hamlin Machine Co. v. Holtite Mfg. Co., 197 Md. 148, 158, 78 A.2d 450.

■ Petitioners herein not only filed a secured claim based upon their alleged lien arising out of the sale, but set up the alleged lien in opposition to the trustee's petition for a turn-over order. They pressed their contention to a decision, which was adverse to them. Under either the Maryland rule or the general rule set out in the Restatement of Contracts, petitioners elected to affirm the sale, with full knowledge of all the facts, and cannot now proceed on the inconsistent theory that they are entitled to rescind the transaction for fraud.

■ III. A party seeking rescission must restore the status quo by returning or offering to return whatever he has received under the transaction, subject to certain qualifications not material here. Williston on Sales, rev. ed., secs. 648, 649; Operators' Piano Co. v. First Wisconsin Trust Co., supra; Talbert v. Seek, 210 Md. 34, 122 A.2d 469; City of Baltimore v. De Luca-Davis Construction Co., 210 Md. 518, 124 A.2d 557.

■ Petitioners have not offered to return to the trustee in bankruptcy the Mercury automobile which they received from Bentzel as part of the challenged transaction, nor to pay to the trustee the agreed value of his equity therein.

The decision of the referee is affirmed.