THE METROPOLITAN SAVINGS BANK OF BALTIMORE
CITY *vs.* THE MAYOR AND CITY COUNCIL OF BAL-
TIMORE.

THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* THE
METROPOLITAN SAVINGS BANK OF BALTIMORE.

*Liability of a Corporation to the Holder of its Certificate
of Stock—Loan on a Certificate of stock with a Forged en-
dorsement of Transfer—Agency—Pari delicto.*

A corporation by issuing stock, declares to the world by its certifi-
cate that the person in whose name it stands is the holder of the
number of shares which the certificate states him to be; and that
it is issued with the intention that it shall be so used and acted
upon; and the company is thereby liable to any one who has ac-
cepted the same and acted thereon to his injury.

But it is only to the extent that loss has actually been incurred
through the misrepresentation made by the certificate that it will
be made good.

H. presented a certificate of Baltimore City stock for $18,400 to a
bank in said city, and requested a loan of $3500 thereon. The
stock stood in the name of K.; and purported to bear his endorse-
ment for transfer. K. was a minor and the indorsement was a for-
gery, though the bank was ignorant of both these facts. The loan
was made and H. gave his note therefor, and deposited the certifi-
cate with the bank as collateral security. Afterwards H. requested
a further loan of $6,000 upon the certificate of stock already held
by the bank as collateral for the first loan. It was agreed on the
part of the bank to make the additional loan, provided H. would
have a new certificate made out in the name of the bank to cover
both loans. H. received at the time $2000 of the new amount
agreed to be loaned, and also the certificate to take to the City
Register to have changed into two certificates, one of which should
be in the name of the bank. H. took the certificate to the City
Register and a certificate for $10,000, was made out in the name
of the bank, and another for $8400, in the name of the original

holder. On the receipt of the new certificate the bank gave H. the balance of the $6000 agreed to be loaned. At the same time the whole indebtedness was consolidated; the old note for $3500 was surrendered, and a new note was taken for $9500. Subsequently a further loan of $500 was made upon the new certificate, and still later the bank bought the certificate outright and surrendered the note for the loans. The question arising in equity between the bank and the city, upon the discovery of the forgery, as to which should bear the loss, it was HELD:

1st. That to the extent of the advances actually made before the ten thousand dollar certificate was issued, the bank having confided wholly in the genuineness of the indorsement and the truthfulness of the statements of H. in respect to the matter, the city was in no way responsible for the negligence of the bank in that regard.

2nd. That the city was negligent in not requiring certain proof that the transfer was genuine before it cancelled the old and issued the new certificates; but the bank had no equity as against the city to the extent of the loans previously made, unless the city's action induced the bank to put itself in a worse position than it already occupied, of which there was no proof.

3rd. That the city was answerable for the subesquent advances made upon the faith of the new certificate.

4th. That the surrender of the first note by the bank and its taking a new note, including both the original and the subsequent loans, did not make the first loan a new one, and the bank ought not to be allowed thereby to escape the consequence of its original negligence.

5th. That the city could not escape its liability on account of the loans made by the bank subsequent to the issue of the new certificate, and on account of the subsequent purchase of said certificate by the bank, on the ground that H. was the agent of the bank to receive the transfer, there being nothing to connect the bank with the deception practised upon the city.

6th. That the bank was entitled to be reimbursed the actual amounts paid by it upon the faith of the new certificate, with interest thereon, from the date such sums were paid respectively, less however the interest on the certificate paid to it by the city, prior to the discovery of the forgery.

CROSS-APPEALS from the Circuit Court of Baltimore City.

The Court below decreed that the Mayor and City Council of Baltimore should pay to the Metropolitan Savings Bank of Baltimore the sum of $5700, with interest till paid, on $4000 thereof, from the 20th of July, 1876, to the 13th of November, 1876; on $4500 thereof, from the 13th of November, 1876, and on $5700, the whole thereof, from the 29th of November, 1876, less the amount of interest or dividends shown to have been paid by the Mayor and City Council of Baltimore. It was further decreed that the Mayor and City Council should pay to the Metropolitan Savings Bank, its costs in the proceedings. From this decree, both parties appealed. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., IRVING, RITCHIE, and BRYAN, J.

*Henry C. Kennard*, and *S. Teackle Wallis*, for the Metropolitan Savings Bank of Baltimore.

*Bernard Carter, City Solicitor*, for the Mayor and City Council of Baltimore.

IRVING, J., delivered the opinion of the Court.

These cross-appeals are a continuation of *Mayor and City Council of Baltimore vs. Frederick M. Ketchum, Jr., by his guardian, Wm. Hollingsworth Whyte*, 57 *Md.*, 23, wherein the city was required to issue a new certificate of stock to Frederick M. Ketchum, a minor, whose stock had been cancelled upon a forged assignment thereof. The question now involved is, shall the loss resulting from the forgery be borne by the city, or by the Metropolitan Savings Bank; or shall the same be shared by the city and the bank as has been decreed by the Circuit Court?

There can be no doubt, that a corporation, by issuing stock, declares by its certificate to the world, that the person

in whose name it stands, is the holder of the number of shares which the certificate states him to be, and that it is issued with the intention that it shall be so used and acted upon, and the company is thereby liable to pay to any one who has accepted the same, and acted thereon to his injury. The city solicitor in this Court concedes this to be the established law, and it is unnecessary to quote authorities to sustain that position.

The object of this rule of law, is to prevent loss to a party who shall be deceived by the certificate, and it is only to the extent that loss *has actually* been incurred *through misrepresentation,* made by the certificate, that it will be made good. The inquiry here is, to what extent was the bank actually induced to lend its money upon the statements of the certificate alone? The essential and undisputed facts are as follows: On the 27th day of May, 1876, Isaac W. M. Helm, (together with George W. Bishop, who had lately been one of the Judges of the Orphans' Court of Baltimore City,) came to the bank and requested a loan of $3500, and offered as collatual security a certificate of stock of the city for $18,400. The stock stood in the name of Frederick M. Ketchum, Jr., and purported to bear his endorsement for transfer. The holder was a minor, and the endorsement was forged; though the bank was ignorant of both these facts. The loan was made, and Helm gave his note to the bank, payable one year after date, which was duly discounted, and the bank accepted the certificate with the endorsement as security for the money lent.

Upon the 18th of July following, Helm accompanied by Bishop, again called at the bank and requested a further loan of six thousand dollars upon the certificate of stock already held by the bank, as collateral for the first loan. It was agreed on the part of the bank to make this additional loan, provided Helm would have a new certificate made out in the name of the bank, to cover both

loans. Helm agreed to this, but said it would take some-time to get it done, and meanwhile he wanted $2000 for immediate use, which the bank gave him; and also gave him the certificate for $18,400 to take to the city register and have changed into two certificates, one of which should be in the name of the bank. It is proper to state in this connection, that in the first interview, Helm stated that Ketchum in whose name the certificate stood, and by whom it professed to be endorsed for transfer, was his brother-in-law, and that he held himself an interest in the stock. In accordance with the arrangement, Helm took the certificate to the city register accompanied by Bishop, and a certificate of ten thousand dollars was made out in the name of the Metropolitan Savings Bank of Baltimore; and one for $8,400 was made out in favor of the original holder. The certificate for the Bank was left with the register, and the next day, one of the officers of the bank called and received it. This having been done, the bank gave Helm the balance of the six thous-and dollar loan, less the discount on all, including the two thousand dollars lent on the day of the second appli-cation. At that time, the whole indebtedness was con-solidated, the old note for $3500 was surrendered, and a new note was taken for $9500. Subsequently about the 13th of November, 1876, the bank made another loan of five hundred dollars upon the new certificate, and still later about the 29th of the same month bought the certificate out-right, paying the current rate of premium therefor, and surrendering the note for the loans. For nearly two years, the city paid the interest on the certificate to the bank, before the forgery was discovered. The fraud being discovered, the city ceased to recognize the certificate, and this litigation began.

On the part of the city, it is contended, that the bank, upon this state of facts, made Helm their agent to have the certificate changed which they held as collateral on a

forged endorsement, and having entrusted him therewith, and sent him with Mr. Bishop to have the new certificate issued to the bank, the city officer was thereby thrown off his guard, and induced to make the change at the instance of the bank; and the bank being first deceived, caused them to be deceived, and therefore should bear the whole loss.

On the part of the bank it is contended that in no sense can the bank be regarded as having made Helm its agent for any purpose, and that the city was bound at its peril, to know that the transfer was properly authorized; and inasmuch as the city upon a forged endorsement issued to the bank a ten thousand dollar certificate, by that act it had deceived the bank, and induced it to lend its money and make a transaction it would not have entered into without such certificate ; and thereby it had been lulled into security and failed to make from Helm the money first loaned on the original certificate.

To neither of these contentions did the learned Judge who decided this case below give unqualified assent. He thought the bank should bear the loss resulting from its unwarranted confidence to the extent of the loans made on the faith of the old certificate and the representations of Helm before the new certificate was issued ; and that the city should bear the loss resulting from further advances made by the bank on the faith of the new certificate, and its purchase, after the certificate was made out in the name of the bank. This decision was based upon the principles decided in *Brown, Lancaster & Co. vs. Howard Fire Insurance Co., et al.,* 42 *Md.,* 384, and *John A. Hamilton & Co. vs. The Central Ohio R. R. Co.,* 44 *Md.,* 551. We think these cases entirely justified the Court in the conclusion reached, and that there is no proof in this case to take it out of the operation of the principles there enunciated, or to distinguish it from them. To the extent of the advances actually made before the

ten thousand dollar certificate was issued, the bank certainly confided wholly in the genuineness of the endorsement, and depended upon the truthfulness of Helm in respect to his interest in the same and his statements about it. The city was in no way responsible for their negligence in that regard. The bank was careless. It accepted as true that which was false, and had parted with its money upon the faith, that the certificate, which was genuine, was also genuinely endorsed for transfer, so that it could take title under it. The city was negligent in not requiring certain proof that the transfer was genuine before it cancelled the old and issued new certificates. But the equitable title of the bank, to the extent of advances already made, existed at the time of, and before the new certificate was issued; and, as against the city, it has no equity to that extent, unless the city's action induced the bank to put itself in a worse position than it already occupied; which we think the proof fails to establish. If the bank had inquired into the matter and discovered the fraud, the giving of time on the loans procured by the fraudulent representations would have interposed no barrier to proceedings against the borrower, or any one else who had in any way made himself liable in any of the transactions. The issuance of the new stock added nothing to the faith of the bank in the genuineness of the endorsement and truthfulness of Helm. The city was under no obligation to unearth the fraud for the bank so far as it had already been defrauded. But when called on to cancel the stock and issue new certificates, the city was bound to know the transfer was properly authorized, and if it was not, it was answerable for subsequent advances upon the faith of the new certificate. By surrendering the first note and taking a new note including in it the first loan with the subsequent ones, the bank did not make the first loan a new loan. It was only putting the first loan in a new form; and it ought not to be allowed to escape the consequence of its original

negligence in that way. Forty-five hundred dollars was loaned (less the discount) on the faith of the new certificate, and it was bought afterwards and paid for at the current rate of premium therefor. We do not think the city can escape its liability on account of these subsequent transactions upon the ground, as it contends, that Helm was the bank's agent to receive the transfer. The necessary links are wanting in the proof to connect the bank with the deception. The bank was deceived by the endorsement and Helm's statements respecting the same and his interest in the certificate. The city had nothing more, but was deluded by the same means. The city did not know when it issued the certificate any thing more than it obtained from Helm. It could not know the certificate had ever been in the bank's possession. True the bank's officer called and received the certificate which was left with the City Register for it. But this was after the cancellation of the old, and the issue of the new certificate. The bank is not connected with the imposition upon the city, and consequently the city must bear the loss resulting from the new loans and the purchase of the remaining interest Helm was supposed to have in the ten thousand dollars of stock. When the certificate was issued the bank already supposed itself to have an interest of fifty-five hundred dollars in the stock to be issued in its name; and the subsequent transaction with Helm was but a purchase from him of what the bank supposed was his equity of redemption therein. It is but equitable to regard the city and bank as *in pari delicto,* and to make them share the loss in the proportions we have indicated.

Whilst we agree with the Circuit Court in the construction of the authorities applicable to this case, and as to the principles which were intended to be applied, we find that the Court has inadvertently fallen into some errors in the amounts decreed to be paid by the city which must be corrected.

The bank must be reimbursed for the actual amounts paid out by it after the issue of the new certificate to it, with interest thereon from the date such sums were paid out respectively.    The sums for which the bank is entitled to be reimbursed are as follows: $3592.67 with interest from the 20th of July, 1876; $494.75 with interest from the 13th of November, 1876; $1200 with interest from the 29th day of November, 1876; and the further sum of $178.50, amount of interest rebated on the 20th of July, 1876, (when the loans were consolidated) with interest from that date.    The aggregate of these several amounts with interest must be credited with such amount of interest as has been actually paid by the city to the bank upon the certificate issued to it.    There being errors to be corrected on each side the decree will be reversed on each appeal, and the cause will be remanded, that a decree may be passed in conformity with this opinion.    The costs of these appeals will be equally divided between the parties.

*Decree reversed, and
cause remanded.*

(Decided 8th January, 1885.]