THE JENNIE CLARKSON HOME FOR CHILDREN, Respondent, *v.* MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY, Appellant and Respondent, and ROBERT GIBSON, as General Partner of the Limited Partnership of H. KNICKERBACKER & Co., Appellant.

1. PRINCIPAL AND AGENT — LARCENY OF REGISTERED RAILWAY BONDS BELONGING TO CORPORATION BY ITS TREASURER — LIABILITY TO CORPORATION FOR UNAUTHORIZED ACTS OF PARTIES MAKING THEM NEGOTIABLE AND SELLING THEM. A provision in the by-laws of a charitable corporation giving its treasurer charge of and making him responsible for the deeds, contracts, securities and money belonging to

the corporation, but requiring him to deposit the money in a bank or trust company as the directors shall order, to be drawn out only on a check signed by him and countersigned by the president, confers no actual authority upon the treasurer to procure the transfer of railway bonds registered in the name of the corporation into negotiable securities and to sell or dispose of them, in the absence of a resolution of the board of directors authorizing such acts; nor can such authority be implied where the corporation is engaged in no commercial business in which he has been held out to the public as possessing the power to transfer or sell its securities in its name or under its power of attorney, by which third persons have been induced to part with their property. Where, therefore, the treasurer of such corporation, without the knowledge or consent of the corporation or any of its officers and with the intent of converting them to his own use, abstracted certain railway bonds registered in the name of the corporation, and by means of a forged resolution of the board of trustees purporting to authorize their sale, and a fraudulent power of attorney signed in the name of the corporation by him as treasurer, induced the transfer agent of the railway company, a member of the New York Stock Exchange, to change the registration into bonds payable to bearer and by the same means induced a broker, also a member of the exchange, who knew the bonds were registered, advised him how to change them, assisted in the preparation of the power of attorney which was witnessed by him, and who transmitted all the papers on which the transfer agent acted, to sell them and pay over to him the proceeds, which he appropriated to his own use and then absconded, the corporation may recover from either party the bonds or their value; and a defense that the acts of the treasurer bound the corporation and payment of the proceeds to him was payment thereto cannot be sustained for two reasons: *First,* he had no authority, actual or implied, to dispose of the bonds, *second,* he was a thief from the beginning, and those dealing with him so dealt at their peril.

2. LIABILITY OF RAILWAY COMPANY FOR UNAUTHORIZED TRANSFER OF ITS REGISTERED BONDS INTO NEGOTIABLE SECURITIES — LIABILITY OF BROKER FOR SELLING THEM AND PAYING OVER PROCEEDS. The railway company is liable because it knew the bonds belonged to the corporation and violated its undertaking therewith that it would not transfer them except by its direction or that of its duly authorized attorney, thus enabling them to be sold in the market, and the fact that its transfer agent was deceived by misrepresentations and forgeries does not relieve it from liability; the broker is liable because he knew the bonds belonged to the corporation both before and after the registration was changed and that he had no right to sell them without its authority, and the fact that he was also deceived does not relieve him from responsibility.

3. LIABILITY OF RAILWAY COMPANY AND BROKER AS BETWEEN THEMSELVES — CONSTRUCTION OF RULE OF NEW YORK STOCK EXCHANGE AS APPLICABLE TO TRANSFER OF SECURITIES. As between the railway com-

pany and the broker, however, the loss must fall upon the latter.   Both the transfer agent and he were members of the exchange, a rule of which provides that "An indorsement by a member of the Exchange on a certificate is considered a guarantee of the correctness of the signa‐ ture of the party *in whose name the stock stands;*" upon this rule is based a custom among its members and the railway transfer agencies in the city of New York that the signature of a stock exchange house or a member thereof upon a power of attorney to transfer bonds is a guarantee of the correctness of the signature of the parties purporting to execute it. The rule as applicable to stock standing in the name of a corporation means not only that the witnessing of the power of attorney is a guarantee of the correctness of the signature of the person who signs for the corpora‐ tion but that he had authority to sign : it is the purpose of the rule to cast upon the broker who witnesses the signature the duty of ascertaining whether the person signing the name of the corporation had authority so to do and to make the witness a guarantor that it is the signature of the cor‐ poration in whose name the stock stands: the same rule applies to the transfer of registered bonds: the broker having witnessed the signature to the power of attorney, and having transmitted the bonds together with the power of attorney and forged resolution to the railway company, he became liable thereto for any judgment it may be compelled to pay by reason of the transfer made pursuant to such power of attorney.

*Jennie Clarkson Home* v. *M., K. & T. Ry. Co.*, 92 App. Div. 617, affirmed.

(Argued May 3, 1905; decided May 30, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 11, 1904, affirming a judgment in favor of plaintiff and of defendant Missouri, Kansas and Texas Railway Company, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry W. Hayden, W. Kintzing Post* and *Herbert L. Satterlee* for defendant, appellant and respondent.   The judg‐ ment against the defendant railway company should be reversed, upon the ground that defendant railway company had authority, as against plaintiff, to change the registry of the bonds in suit from plaintiff's name "to bearer." (*Walker* v. *D. T. Co.*, 47 Mich. 338; *B. & A. R. R. Co.* v. *Richard‐*

4

*son,* 135 Mass. 473 ; *Continental Bank* v. *Bank of Commonwealth,* 50 N. Y. 575 ; *Trustees, etc.,* v. *Smith,* 118 N. Y. 641 ; *Thompson* v. *Simpson,* 128 N. Y. 270 ; *Curnen* v. *Mayor, etc.,* 79 N. Y. 511 ; *Swan* v. *N. B. A. Co.,* 7 H. & N. 603 ; *Bank* v. *N. Y., L. E. & W. R. Co.,* 106 N. Y. 195 ; *Jarvis* v. *Man. B. Co.,* 148 N. Y. 652 ; *F. A. Bank* v. *F. S. S. R. R. Co.,* 137 N. Y. 231.) The defendant railway corporation is not liable, and the judgment herein against it should be reversed because its act in changing the registry of the bonds in suit from plaintiff's name "to bearer" was not the proximate cause of plaintiff's loss. (*Lowery* v. *W. U. T. Co.,* 60 N. Y. 198 ; *Mairs* v. *B. & O. R. R. Co.,* 175 N. Y. 409 ; *Bank of Ireland* v. *Evans,* 5 H. L. Cas. 389 ; *Salem Bank* v. *Gloucester Bank,* 17 Mass. 1 ; *Brown, Lancaster & Co.* v. *H. F. Ins. Co.,* 42 Md. 384 ; *Canal Bank* v. *Bank of Albany,* 1 Hill, 287 ; *Swan* v. *N. B. A. Co.,* 7 H. & N. 601 ; *Hambleton & Co.* v. *C. O. R. R. Co.,* 44 Md. 551 ; *O'Herron* v. *Gray,* 168 Mass. 573 ; *Scallans* v. *Rollins,* 173 Mass. 275 ; *Penn. Co.* v. *Franklin Co.,* 181 Penn. St. 40 ; *Trimble* v. *Bank,* 71 Mo. App. 467.) If the judgment is affirmed in favor of plaintiff then it should be affirmed in all respects as between the defendants ; the defendant Gibson should ultimately bear the loss. (Story on Agency, ch. 10, § 264 ; *Oliver* v. *Bank of England,* L. R. [1 Ch. 1892] 610 ; *Starkey* v. *Bank of England,* L. R. [1 App. Cas. 1903] 114 ; *B. & A. R. R. Co.* v. *Richardson,* 135 Mass. 473 ; *Hambleton* v. *C. O. R. R. Co.,* 44 Md. 551 ; *Sheffield* v. *Barclay,* L. R. [1 K. B. 1903] 17 ; *Simm* v. *A. A. Tel. Co.,* L. R. [5 Q. B.] 188 ; *Trimble* v. *Bank,* 71 Mo. App. 467.)

*John G. Milburn, William S. Maddox* and *William R. Bronk* for defendant, appellant. No liability on the part of the defendant Gibson to the plaintiff was established. (*Cooper* v. *I. C. R. R. Co.,* 38 App. Div. 22 ; *Pollock* v. *Nat. Bank,* 7 N. Y. 274 ; *King* v. *McCalla,* 94 N. Y. 317 ; *Romeyn* v. *Sickles,* 108 N. Y. 650 ; *Terry* v. *Munger,* 121 N. Y. 161 ; *Reed* v. *McConnell,* 133 N. Y. 425 ; *Truesdale* v. *Sarles,* 104

N. Y. 164; *Newdecker* v. *Kohlberg*, 81 N. Y. 296; *Barnes* v. *Quigley*, 59 N. Y. 265.) The plaintiff was not entitled to recover against Gibson, because Lessels, as treasurer of the plaintiff, by virtue of his office, had apparent authority to employ Gibson to sell the bonds and receive the proceeds thereof, on which Gibson was justified in relying. The plaintiff is estopped from denying that Lessels had such authority, and the sale of the bonds by the defendant Gibson was not the proximate cause of the plaintiff's loss. (*Walker* v. *D. T. Co.*, 47 Mich. 338; *Holden* v. *Phelps*, 141 Mass. 456; *Jarvis* v. *M. B. Co.*, 148 N. Y. 652; *Akin* v. *Blanchard*, 32 Barb. 527; *L., etc., Ry. Co.* v. *L. T. Co.*, 174 U. S. 552; *Commonwealth* v. *R. S. Bank*, 137 Mass. 431; *Whiting* v. *Wellington*, 10 Fed. Rep. 810; *Holden* v. *Whiting*, 29 Fed. Rep. 881; *F. Ave. Bank* v. *F. S. St., etc., Ry. Co.*, 137 N. Y. 231; *N. Y., N. H. & H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Torne* v. *P. B. R. R. Co.*, 39 Md. 35; *W. M. R. R. Co.* v. *Franklin Bank*, 60 Md. 36; *Shaw* v. *P. P., etc., Co.*, L. R. [13 Q. B. D.] 103.) No liability on the part of the defendant Gibson to the defendant railway company was established. (*Sheffield* v. *Barclay*, L. R. [2 K. B. 1903] 580.) The facts alleged in the answer of the defendant railway company as a basis for its claim against the defendant Gibson are not among the facts which are set forth in the complaint as the foundation of the plaintiff's claim, and accordingly cannot be made the basis of a judgment in favor of the railway company against the defendant Gibson. (*Smith* v. *Hilton*, 50 Hun, 236; *Kay* v. *Whittaker*, 44 N. Y. 565; *Merchants' Bldg.* v. *Snyder*, 52 App. Div. 606; *O. S. Nav. Co.* v. *Co. T. E.*, 134 N. Y. 461; *Rafferty* v. *Williams*, 34 Hun, 544; *Lansing* v. *Hadsall*, 26 Hun, 619.)

*Charles F. Brown, Henry W. Sackett* and *William A. McQuaid* for respondent. The defendant railway company could not legally transfer and make payable to bearer the bonds registered in plaintiff's name without the actual consent and authority of the plaintiff corporation; and, having made

such transfer without such consent, it is liable for the damages resulting to plaintiff, even though it acted in good faith and without negligence, upon forged authority which it believed to be genuine. (*Cooper* v. *I. C. R. R. Co.*, 38 App. Div. 22; *Knox* v. *E. M. Co.*, 148 N. Y. 454; *People's Bank* v. *St. A. R. C. Church*, 109 N. Y. 512; *Col. Bank* v. *G. T. Church*, 127 N. Y. 268; *Taylor* v. *Commercial Bank*, 174 N. Y. 181; *Merchants* v. *Bank of England*, 56 L. T. Rep. 665; *Pollock* v. *Nat. Bank*, 7 N. Y. 274; *Tel. Co.* v. *Davenport*, 97 U. S. 369; *Davis* v. *Bank of England*, 2 Bing. 393; *Taylor* v. *M. R. Co.*, 28 Beav. 287.) The defaulting treasurer, Lessels, had no authority from the plaintiff, express or implied, to cause the bonds to be transferred to bearer and sold. He was merely the custodian of the documents in question. He had no discretionary authority or power to have them transferred, or to do anything with them except keep them in his "charge," and the defendants had no legal right to assume the contrary. (*People's Bank* v. *St. A. R. C. Church*, 109 N. Y. 512; *Merchants* v. *Bank of England*, 56 L. T. Rep. 665; *Swan* v. *N. B. A. Co.*, 7 H. & N. 603; *Knox* v. *E. M. Co.*, 148 N. Y. 441; *Cottam* v. *E. C. Ry. Co.*, 1 J. & H. 243.) No act of commission or omission on the part of the plaintiff was the proximate cause of the loss complained of. (*Swan* v. *N. B. A. Co.*, 7 H. & N. 603; 2 H. & C. 175; *Knox* v. *E. M. Co.*, 148 N. Y. 441; *Cottam* v. *E. C. Ry. Co.*, 1 J. & H. 243; *Penn Co.* v. *Ins. Co.*, 37 Atl. Rep. 191.) The acts of the appellant railroad corporation in releasing the bonds from registration cannot be sustained or justified upon any ground. (*Weber* v. *Williams College*, 23 Pick. 302; *Packard* v. *Universalist Society*, 10 Metc. 427; *Torry* v. *D. & C.*, 5 Allen, 327; Story on Agency [9th ed.], § 452; Mechem on Agency, § 705; Angell & Ames on Corp. ch. 9, § 310; 2 Morawetz on Corp. §§ 577–587; *Taylor* v. *Commercial Bank*, 174 N. Y. 181; *W. S. L. Sav. Bank* v. *Parmalee*, 95 U. S. 557; *F. A. Bank* v. *F. S. & G. S. F. R. R. Co.*, 137 N. Y. 231; *M. L. Ins. Co.* v. *F. S & G. S. F R. R. Co.*, 139 N. Y.

146; *Holden* v. *Phelps*, 141 Mass. 456 ; *Comm. Bank* v. *R. S. Bank*, 137 Mass. 431.)

HAIGHT, J.   This action was brought to recover four registered bonds of the par value of one thousand dollars each, payable in gold, in the year 1990, with four per cent interest coupons attached, numbered respectively 8872, 8873, 8874 and 8875, issued by the defendant Missouri, Kansas and Texas Railway Company and secured by first mortgage on the property of the company, or bonds of like amount and value, or in default thereof to recover the value of such bonds.   The trial resulted in a judgment for the plaintiff substantially for the relief demanded in the complaint, which has been affirmed in the Appellate Division.   The facts are without substantial dispute.   The plaintiff, the Jennie Clarkson Home for Children, is a domestic corporation organized under the laws of this state for charitable purposes.   It was the owner of the bonds in question, which by their terms were not transferable after registration unless made on the books of the railway company by the registered holder or by his attorney duly authorized and noted on the bonds.   They were kept in a safe deposit vault in one of the banks in the city, the president and the treasurer of the plaintiff each having a key thereto.   On or about the 11th day of March, 1902, George W. Lessels, treasurer of the plaintiff, without the knowledge or consent of any of the officers or directors of the plaintiff corporation, took the bonds in question from the safe deposit vault where they were stored, for the purpose of converting them to his own use, and thereupon he took them to the office of Robert Gibson, who was a member of the Stock Exchange, doing business as stockbroker under the name of the limited partnership of H. Knickerbacker & Company, and asked that they be sold.   The cashier of the defendant Gibson, seeing that the bonds were registered in the name of the plaintiff corporation, informed Lessels that before the bonds could be sold the registration must be so altered that they would be payable to bearer.   Lessels asked how that could be

done, and he was then instructed to take them to the transfer office of the defendant railway company and that there he could find out what was to be done in order to effect the change. Upon application to the railway company he was advised, in substance, that it would be necessary to have a resolution of the board of directors of the plaintiff corporation passed, authorizing a transfer of the bonds, and the furnishing of the company with a copy authenticated by the certificate of the secretary under the seal of the corporation, to the effect that the copy presented was a true and correct copy of the resolution of the board ; and that a power of attorney would have to be executed by the corporation authorizing the transfer of the bonds to bearer, the signature of which must be witnessed by some Stock Exchange house. Thereupon Lessels returned to the office of H. Knickerbacker & Company and had the power of attorney drawn, and signed it in the name of the plaintiff, the Jennie Clarkson Home for Children, George W. Lessels, treasurer, and underneath is the statement that it was signed and acknowledged in the presence of John F. Busch, who was the cashier for H. Knickerbacker & Co., and by H. Knickerbacker & Co. which was signed by Gibson. At the same time, Lessels presented to H. Knickerbacker & Co. a paper purporting to be a copy of the resolution of the board of directors, authorizing a sale of the bonds with the certificate of the secretary, under seal, attached. But the resolution was never passed by the board of directors, the certificate of the secretary was never signed by him, and the seal affixed thereto was not the seal of the corporation. All of these papers had been forged.

Upon their presentation to defendant Gibson, he caused them to be transmitted to the office of the railway company and there the bonds were changed and made payable to bearer, and then they were returned to the defendant Gibson who sold them and paid the proceeds over to Lessels, who converted the money to his own use and subsequently absconded.

The plaintiff's by-laws provide that " The treasurer shall have charge of and be responsible for all deeds, contracts and

securities, and all moneys belonging to the corporation, from whatever source derived, and shall deposit said moneys and keep the same on deposit until properly disbursed in such bank or trust company as may be ordered by the directors; and the account thereof shall be kept in the name of 'The Jennie Clarkson Home for Children.' He shall also keep a book in which all receipts and disbursements shall be entered. No money shall be drawn out of the bank except on the check of the treasurer, countersigned by the president, or in his absence or inability, by one of the vice-presidents or president pro tem. The treasurer shall at each stated meeting submit a concise exhibit of the funds and securities of the corporation, particularly stating the receipts and disbursements of the preceding month."

It is now contended on behalf of the defendants, in the first place, that Lessels as treasurer of the plaintiff is deemed to have had the authority to have the registered bonds changed, so as to be payable to the bearer, and to sell the same; that no resolution of the board of trustees authorizing such transfer or sale was necessary; and that the plaintiff is estopped from denying the genuineness of the resolution or the power of attorney. And, *second*, that the payment of the proceeds of the sale of the bonds over to Lessels, the treasurer of the plaintiff, operated as a payment to the corporation, and, therefore, it cannot recover.

The law upon the subject is elementary and has been recognized by a long line of cases, but we shall refer to only a few. In Story on Agency (8th ed.) the rule was stated as follows: "It is a general doctrine of law that although the principal is not ordinarily liable * * * for the acts or misdeeds of his agent, unless, indeed, he has authorized or co-operated in those acts or misdeeds; yet, he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances, or misfeasances, and omissions of duty, of his agent, in the course of his employment, although the principal did not authorize or justify, or participate in, or, indeed, know of such miscon-

duct, or even if he forbade the acts, or disapproved of them. In all such cases the rule applies, *respondeat superior;* and it is founded upon public policy and convenience; for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case, the principal holds out his agent as competent and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency." (Section 452.) " But, although the principal is thus liable for the torts and negligences of his agent, yet we are to understand the doctrine with its just limitations that the tort or negligence occurs in the course of the agency; for the principal is not liable for the torts or negligences of his agent in any matters beyond the scope of the agency, unless he has expressly authorized them to be done, or he has subsequently adopted them for his own use or benefit." (Section 456.) (*Ruben* v. *Great Fingall Consolidated,* L. R. [2 K. B. Div. 1904] 712.)

In the case of *Bank of Ireland* v. *Evans' Charities* (5 House of Lords Cases, 389) a charitable corporation possessed stock which was registered in the Bank of Ireland. The trustees of the corporation negligently suffered its seal to be left with the secretary who at different times affixed the same to powers of attorney, without authority, and presented them to the bank and procured the stock to be transferred and converted to his own use. Action was then brought by the trustees of the charitable corporation against the bank, and it was held that they were entitled to recover. And to the same effect is the case of *Mayor, etc.,* v. *Governor and Company of the Bank of England* (L. R. [21 Q. B. D.] 165).

In the case of *Knox* v. *Eden Musee Americain Company* (148 N. Y. 441) it was held that the title of the true owner of a stolen certificate of stock may be asserted against any one subsequently obtaining its possession, although the holder may be a *bona fide* purchaser; that the act of the manager of a busi-

ness corporation, without any authority, either apparent or real, in issuing as valid stock, security for a personal debt, surrendered certificates of stock directed by its president to be canceled, and of which the company had never invested the manager with *indicia* of ownership, is a wilful and criminal act, and upon no principle of agency, either express or implied, can the corporation be made liable therefor; that a master is not bound to anticipate or provide against the possibility of criminal acts on the part of a servant who has hitherto been faithful in the performance of his duties, and there must be something more than the mere intrusting to a servant of the custody of a chattel and the consequent opportunity for theft in order to preclude the master from reclaiming it, if stolen by the servant and sold to another.

There are but two other cases to which we deem it necessary to refer, in one of which the principal was held liable for the acts of defendant's agent, and in the other the principal was held not liable. The first case is that of *Fifth Avenue Bank of New York* v. *Forty-second Street and Grand Street Ferry Railroad Company* (137 N. Y. 231), and the other is that of *Manhattan Life Insurance Company* v. *Forty-second Street and Grand Street Ferry Railroad Company* (139 N. Y. 146). The opinion in each case was written by the same judge, who, after considering many authorities upon the subject, ha., carefully drawn the distinction between the two classes of cases, upon which the liability of the principal depends. In the first case, one Allen was the defendant's secretary, treasurer and transfer agent. He filled out a blank certificate of stock taken from defendant's certificate book, forged the name of the president thereto, signed his own name as treasurer, then countersigned it as transfer agent and impressed the seal of the corporation thereon. He then procured from the plaintiff a loan upon his promissory note secured by a pledge of the certificate. The certificate upon its face was regular in every respect, and the secretary was the transfer agent of the company, duly authorized to issue stock. It was, therefore, held that he acted within the scope of his

employment, and that he was held out by the plaintiff as a competent and fit person to be trusted for that purpose. In the next case, the president of the railroad company had signed certain certificates of stock in blank which were left with other officers of the bank, to be used in case a stockholder desired to transfer his stock during the absence of the president. The same secretary and transfer agent referred to in the former case obtained possession of one of these certificates. He filled up the blank, inserting his own name as stockholder, forging the name of the treasurer and signed his own name as transfer agent. He then pledged the same as collateral security for a loan. In the meantime he had become president of the company, and his authority as transfer agent had ceased to exist. So that at the time that he issued the certificate he was not acting within the scope of any general authority conferred upon him by defendant to issue stock certificates; and it was held that the company was not bound by any representations made by him as to the genuineness of the certificate, and that the company was not liable therefor. It thus appears that the test as to the liability of the principal for the acts of his agent is as to whether the acts were committed in the course of his employment and within the scope of his agency. It remains to be determined within which line of cases the facts of this case fall.

Again referring to the by-laws of the plaintiff by which the powers of the treasurer are prescribed, we find that he is given the charge of and made responsible for the deeds, contracts, securities and moneys belonging to the corporation. But as to the money, he is required to deposit it in such bank or trust company as the directors shall order and can only draw it out upon the check signed by him as treasurer and countersigned by the president. It will be apparent that while he is made the custodian of the deeds, contracts and securities, he is given no power to execute deeds, contracts, or to sell or dispose of the securities. He is not even given the power to dispose of the money except upon a check countersigned by the president. He has been given no power to

sign the name of the corporation to any contract, power of attorney or other papers, or to affix the seal of the corporation thereto. His position appears to be that of treasurer solely, having the custody of the property of the corporation for the purpose of preservation, the collecting of the income and the paying of the necessary expenses of its management, reporting in detail to the directors the amount of such receipts and disbursements at each monthly meeting of the executive committee. He was the treasurer of a charitable corporation, engaged in no commercial business where he had been held out to the public as possessing the power to sell or transfer stock, bonds or other securities of the company, in its name or under its power of attorney, by which third parties had been induced to believe that he possessed such authority and thereby induced to part with their property. Indeed, it is apparent that the defendants did not trust him or act upon any implied authority by virtue of his office to sell and dispose of the bonds, for he was distinctly told by Knickerbacker & Co., when he presented the bonds for sale, that he could not dispose of them without complying with the requirements of the railway company issuing the bonds; and that upon application to that company for such instructions he was informed that they could not be transferred except upon a resolution of the board of directors directing him to dispose of them, and by its executing a power of attorney therefor. It, therefore, appears that he had no actual authority to sell or dispose of the bonds or to execute any power of attorney authorizing such sale or transfer; that he had no implied authority by reason of having been held out by the company as authorized to make sales or transfers of its property or to execute powers of attorney therefor, and, lastly, that the defendants did not understand he had any such power or authority, aside from the forged papers alluded to. We, therefore, think that the facts in this case bring it within the rule recognized in the latter case referred to, in which it was held that the corporation was not liable for the acts of its officer.

The plaintiff was the owner of the bonds in question. They had been registered by the defendant railway company. That company undertook to keep a registry of such bonds and ·not to transfer them, except upon the books of the company by the direction of the owner or by his duly authorized attorney. It is deemed to have undertaken to pay the interest accruing upon these bonds and the principal when. due to such registered owner. The purpose of such registration was to save the owner from loss resulting from larceny or destruction of the bonds. Being registered they could not be sold. If presented to the railway company for payment of the interest or principal by others than the registered owner, payment would be refused. They were only property in the hands of the registered owner. The bonds having been stolen from the plaintiff, it had the right to follow them and recover them wherever found. If they could not be found, it had the right to recover their value from those who had been instrumental in changing them from registered to negotiable bonds. (*Pollock* v. *National Bank*, 7 N. Y. 274.) The defendant railway company knew that the bonds belonged to the plaintiff and that it had no right to cancel the registration thereof without the authority of. the plaintiff. In canceling such registry and making them payable to bearer, thus enabling them to be sold in the market, it violated its agreement with the plaintiff, and it cannot be relieved from the effect of such violation by reason of the fact that its transfer agent was deceived by the forgeries of Lessels. So also did the defendant Gibson know that the bonds belonged to the plaintiff, and that they were registered and could not be sold until the registration was changed. To some extent he assisted Lessels in procuring the registration to be changed. He advised Lessels how to obtain the information to make the change. After the requisite information had been obtained he assisted him in drawing the power of attorney and took part in its execution, becoming a witness thereto. He had been furnished with copies of what purported to be a resolution of the board of directors with the false signatures of the president and secretary attached, which he transmitted

with the bonds to the transfer agent of the railway company to procure the change in the registry. Even after that change had been made he still knew that the bonds belonged to the plaintiff and that he had no right to sell them without its authority. And the fact that he was deceived by the fraudulent misrepresentations of Lessels did not relieve him from the responsibility of his acts with reference to depriving the plaintiff of them. The bonds had been traced into his hands, and the plaintiff had the right to seek them there and recover them if they were still in his possession, or if he had sold them and misappropriated the proceeds, knowing that they were the plaintiff's, to recover the value thereof from him.

As to the second contention, to the effect that the payment of the proceeds arising from the sale of the bonds over to Lessels, the treasurer of the plaintiff, operated as a payment to the corporation so as to defeat its right to recover, we think it cannot be sustained, for the reason already stated ; and in addition thereto, it appears that the larceny of the bonds was complete the instant that Lessels took them from the vault with the intention of appropriating them to his own use. When, therefore, he took the bonds to Gibson's office and offered them for sale his character was that of a thief, and whoever dealt with him thereafter with reference to the bonds was dealing with him in that character. So that if the money derived from the sale of the bonds was paid over to him, it was paid to him in the character which he occupied when he brought the bonds to the office for sale. If the bonds were returned to him after the cancellation of the registration, they were returned to him in the character in which he had originally presented them. The fact that the transfer agent and the defendant Gibson were deceived with reference to his character does not operate to relieve them from the liability which arises to the true owner when they dealt with a person who has committed larceny. We, consequently, conclude that the plaintiff was properly awarded judgment against the defendants.

After the complaint in this action had been served upon

the defendant railway company, it served an answer upon the defendant Gibson, in which it demanded relief as against him, to the effect that in case it was compelled to restore the bonds or pay plaintiff's claim, it should have a judgment, for the amount so compelled to be paid, over as against Gibson. We thus have an issue raised as between the defendants, in which the plaintiff is not interested. Under the provisions of the bonds, they may be registered in the books of the company, and if so registered they will thereafter be transferable only upon the books of the company by the owner in person or by attorney duly authorized. It, therefore, became necessary, in order to change the registry of the bonds, to have a power of attorney executed by the plaintiff. This power of attorney, as we have seen, was drawn in the office of the defendant Gibson and executed in his presence and that of his cashier, by Lessels signing the name of the corporation thereto and underneath his own name with the word "treasurer." It was then witnessed by Gibson and by his cashier. Both Gibson and the transfer agent of the railway company were members of the Stock Exchange. The trial court found as a fact, "that in and by the custom among the members of the New York Stock Exchange and of railway transfer agencies in the city of New York, the signature of a Stock Exchange house or a member thereof upon a power of attorney to transfer securities was, during all the times mentioned in the complaint, a guarantee of the correctness of the signature of the parties purporting to execute it." This finding is based upon the rule of the exchange and the testimony of the witnesses. The rule is as follows: "An indorsement by a member of the exchange, or a firm represented by the exchange, on a certificate is considered a guarantee of the correctness of the signature of the party in whose name the stock stands. In all cases where powers of substitution are used, the original assignment and power of attorney, and each power of substitution, must be guaranteed by a member, or a firm represented in the exchange, resident or doing business in New York." James L. Carter was sworn as a witness on

behalf of the defendant railway company, and testified that he was employed by the banking house of J. P. Morgan & Company ; that they were transfer agents for about one hundred and fifty companies, and that there was an established custom as to the requirements upon the transfer of bonds in the city of New York, and that was to require the guaranty of a Stock Exchange house, or a member of the Stock Exchange, on the power of attorney on which the transfer is made.

As we have seen, Gibson not only witnessed the power of attorney authorizing the transfer of the bonds on the books of the railway company, but he also transmitted the bonds accompanied by such power of attorney and with what purported to be the resolution of the board of directors, to the transfer agent of the defendant railway company to have the change of the registration made. The transfer agent in making the change in the bonds acted upon the papers so forwarded from defendant Gibson's house. Gibson was a member of the Stock Exchange in good standing, acquainted with Lessels, his customer, and he must be deemed to have become a witness to the power of attorney under the custom in force. As we have seen, the bonds stood in the name of the Jennie Clarkson Home for Children. Lessels had no power or authority to sell or transfer the bonds or to sign the plaintiff's name as attorney or agent authorizing the transfer of the bonds. The power of attorney was not, therefore, signed by the genuine or the correct signature of the corporation. Under these circumstances the courts below have held that the defendant Gibson was liable over to the defendant railway company, and the following cases are relied upon as sustaining such liability : *Oliver* v. *Bank of England* (L. R. [1 Ch. Div. 1902] 610 ; affirmed in the House of Lords under title of *Starkey* v. *Bank of England,* L. R. [App. Cas. 1903] 114) ; *Hambleton* v. *Central O. R. R. Co.* (44 Md. 551) ; *Mayor, etc.,* v. *Ketchum* (57 Md. 23) ; *Metropolitan Savings Bank* v. *Same* (63 Md. 6) ; *Trimble* v. *Wollman* (71 Mo. App. 467) ; *Boston & Albany R. R. Co.* v. *Richardson* (135 Mass. 473).

The chief and most important case upon the subject is that

of the recent action of *Oliver* v. *Bank of England,* affirmed
in the House of Lords (*supra*).   While this case may be dis-
tinguishable in several respects from that under consideration,
it must be conceded that the main question involved in that
case is so closely akin to that which we now have under con-
sideration that we ought to treat it as a precedent of great
weight, although not a controlling authority upon the question.
The case of *Corporation of Sheffield* v. *Barclay* (L. R. [2 K.
B. Div. 1903] 580) does not appear to be in exact accord.   Our
attention has been called to no case in this state which is con-
trolling upon the question.   We have, therefore, concluded
to consider the case independent of the decisions, and as if
the question were original.   In view of the fact that a great
proportion of the business of the country is now transacted
through corporations, and that banks, trust companies and
other corporations have become large holders of the stock and
bonds of corporations, and that millions of dollars of, these
securities are transferred daily upon the Stock Exchange in
New York, the question involved becomes one of consider-
able importance.   Sitting as a court of review of the law
only, we are bound by the findings of fact of the trial court
as to the custom in force in the city of New York as
between the brokers and transfer agents of railroad com-
panies.   Under this finding, Gibson, in witnessing the power
of attorney, is deemed to have guaranteed the genuineness of
the signature of Lessels, who wrote the name of the corporation
over his own name as attorney.   This much is conceded.   But
it is contended on behalf of Gibson that he did not, by becoming
a witness, undertake to guarantee that Lessels had authority to
sign the name of the corporation.   This presents the real
question in the case, and it really becomes one of construction
as to the meaning of the rule of the Stock Exchange which is
the basis of the custom found by the trial court.   Under the
rule, an indorsement by a member of the exchange on a cer-
tificate is considered " a guarantee of the correctness of the
signature of the *party in whose name the stock stands.*"   If
stock is held by an individual who is executing a power of

attorney for its transfer, the member of the exchange who signs as a witness thereto guarantees not only the genuineness of the signature affixed to the power of attorney, but that the person signing is the individual in whose name the stock stands. With reference to stock standing in the name of a corporation, which can only sign a power of attorney through its authorized officers or agents, a different situation is presented. If the witnessing of the signature of the corporation is only that of the signature of a person who signs for the corporation, then the guaranty is of no value and there is nothing to protect purchasers or the companies who are called upon to issue new stock in the place of that transferred, from the frauds of persons who have signed the names of corporations without authority. If such is the only effect of the guaranty, purchasers and transfer agents must first go to the corporation in whose name the stock stands and ascertain whether the individual who signed the power of attorney had authority to so do. This will require time, and in many cases will necessitate the postponement of the completion of the purchase by the payment of the money until the facts can be ascertained. The broker who is acting for the owner has an opportunity to become acquainted with his customer and may readily before sale ascertain, in case of a corporation, the name of the officer who is authorized to execute the power of attorney. It was, therefore, we think, the purpose of the rule to cast upon the broker, who witnesses the signature, the duty of ascertaining whether the person signing the name of the corporation had authority to so do, and making the witness a guarantor that it is the signature of the corporation in whose name the stock stands. Inasmuch as the transfer of the registered bonds are controlled by the same custom, the same liability rests upon the witness of the signature to the power of attorney purporting to be executed by the corporation in whose name the bonds are registered. In view, therefore, of the fact that Gibson witnessed the power of attorney and then transferred the bonds, together with the power of attorney so witnessed by him, to the railway company, with the other

papers already alluded to, we think he became liable to the railway company for any judgment which it should be compelled to pay, by reason of the transfer made pursuant to such power of attorney.

Upon this appeal a discussion took place with reference to the form of the action. It was contended on behalf of the defendant Gibson that only an action for conversion could be maintained as against him. The bonds were traced into his hands and he knew that they belonged to the plaintiff. If they remained in his hands, or if he had sold them and then recovered them back, the plaintiff had the right to maintain an action against him to recover them. But no question with reference to the form of the action appears to have been raised upon the trial. The defendants evidently tried all of the questions pertaining to their liability to the plaintiff and to each other without question as to form and we think, therefore, it is now too late to raise such a question.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., BARTLETT, WERNER, JJ. (and GRAY and O'BRIEN, JJ., in result), concur; VANN, J., not sitting.

Judgment affirmed.