DONALD C. APPENZELLAR and Others, Copartners Doing Business under the Firm Name and Style of APPENZELLAR, ALLEN & HILL, Plaintiffs, v. CLIFFORD H. McCALL and Others, Copartners Doing Business under the Firm Name and Style of McCLAVE & Co., Defendants.

Supreme Court, New York County, March 28, 1934.

*Carter, Ledyard & Milburn* [*Leslie D. Dawson* and *Richard K. Hines* .of counsel], for the plaintiffs.

*Stewart Maurice* for the defendants.

LEVY, J.  One Thomas F. Curran, prior to October 22, 1931, was a customer of the defendants, who are stockbrokers, being members of the New York Stock Exchange and associate members of the Curb Exchange.  His account at that time showed a debit balance of $11,758.05 and was long 700 shares of stock of Worcester Salt Company.  On October 21, 1931, Curran requested defendants " to transfer " his account to plaintiffs, who are also stockbrokers and members of the New York Stock Exchange and associate members of the New York Curb Exchange.  On the same day he requested plaintiffs to accept the transfer of his account from the defendants and to pay them his debit balance.  As requested, Curran's account was " transferred " and plaintiffs paid to defendants the debit balance of the account and received six certificates

for 700 shares of stock of Worcester Salt Company. The certificates of stock were each made in the name of Thomas F. Curran. The reverse side of each certificate contained the usual printed form for effecting a transfer and assignment of the shares represented thereby. Curran executed the assignment, which was witnessed as is usually required, and in addition contained the notation which was immediately below Curran's signature: " Signature Guaranteed. C. H. Van Buren & Co.," and below that: " Signature Guaranteed. McClave." Subsequent events showed that the certificates for the 700 shares of stock had been forged by Curran. Plaintiffs bring this action against defendants to recover either the sum of $11,758.05 which they had paid to defendants upon the " transfer " of the account, or the sum of $23,904.93, the amount of the loss which plaintiffs claim they have sustained.

The complaint sets forth three causes of action, all based on the same facts but on different legal theories. The first cause of action is predicated upon the provisions of section 172 of the Personal Property Law. The second cause of action is based upon an alleged breach of an express warranty alleged to have been made by the defendants as to the genuineness of the certificates of stock in question. The third cause of action is based on the claim that the defendants " guaranteed " the genuineness of the certificates.

The transaction here involved was not a contract for the purchase or sale of any security made between the plaintiffs and the defendants. It amounted to no more than did a substantially similar transaction in *Ketchum* v. *Bank of Commerce* (19 N. Y. 499). In that case, as here, a third party paid the debt of another to the creditor and upon such payment received the security for the indebtedness held by the creditor. In that case, as here, the certificates so held as security were forged and worthless and had been transferred to the third party who paid the debt. In the instant case Curran owed the defendants $11,758.05, who held as security the certificates of stock, later discovered to have been forged. By direction of Curran, defendants delivered the certificates to plaintiffs and received payment of the moneys due them. They did no more than Curran had a right to do himself. If nothing more had occurred, there could be no more reason for imposing any liability upon the defendants by reason of this transaction than there was in the *Ketchum* case.

Plaintiffs in their first cause of action predicate defendants' liability upon the provisions of section 172 of the Personal Property Law, which purports to deal only with warranties on *sale* of certificates. The section reads as follows: " Warranties on sale of certificate. A person who for value transfers a certificate, including one

who assigns for value a claim secured by a certificate, unless a contrary intention appears, warrants

" (a) That the certificate is genuine,

" (b) That he has a legal right to transfer it, and

" (c) That he has no knowledge of any fact which would impair the validity of the certificate.

" In the case of an assignment of a claim secured by a certificate, the liability of the assignor upon such warranty shall not exceed the amount of the claim."

Defendants, in my opinion, were not persons who " for value transferred a certificate," or " assigned for value a claim secured by a certificate," and, therefore, the provisions of section 172 of the Personal Property Law are of no avail to the plaintiffs. My view in this respect is emphasized by the provisions of section 173 of the same law, which reads as follows: " No warranty implied from accepting payment of a debt. A mortgagee, pledgee or other holder for security of a certificate who in good faith demands or receives payment of the debt for which such certificate is security, whether from a party to a draft drawn for such debt, or from any other person, shall not by so doing be deemed to represent or to warrant the genuineness of such certificate, or the value of the shares represented thereby."

The second cause of action is based upon a claim of express warranty and representation that the certificates were genuine, alleged to have been made in the course of a telephone conversation between the respective margin clerks of the parties, and arising from the indorsement by defendants of Curran's signature. The bare statement of defendants' margin clerk to the plaintiffs' clerk that defendants had in the account " 700 shares of Worcester Salt " is insufficient to sustain a claim of warranty, especially in view of my conclusion that the transaction was not a sale.

There remains for consideration the effect of the defendants' guaranty of the signature of Curran on the assignment of the certificates. Curran, who was named on the face of the certificate as the holder thereof, actually signed the indorsement on the reverse side. Had the certificate been genuine, no question respecting defendants' guaranty of Curran's indorsement would have arisen. But Curran had forged the name of the issuer of the certificate, which was, therefore, not authentic. Such a guaranty of indorsement has been held to warrant the genuineness of the signature of the holder of the certificate, even to the extent of guaranteeing the authority of an officer who signed an indorsement for transfer of stock owned by a corporate holder. (*Clarkson Home* v. *Missouri, K. & T. R. Co.*, 182 N. Y. 47.) But I am referred to no case where

such guaranty of signature of a transferor is held to be a warranty of the genuineness of the certificate itself, or to put it differently, a guaranty of the genuineness of the signature of the issuer.

Plaintiffs contend, however, that defendants' liability should be predicated upon rule 21 of the rules of the committee on securities of the New York Curb Exchange. The New York Curb Exchange operates under a constitution which defines contracts of members by article XV thereof, as follows: " Sec. 1. All contracts of a member of the Exchange, or of a firm having a member of the Exchange as a general partner, with any other member of the Exchange, or with any other firm having a member of the Exchange as a general partner, for the purchase, sale, borrowing, loaning or hypothecation of securities, or for the borrowing, loaning, or payment of money, whether occurring upon the Floor of the Exchange or elsewhere, are Members' Contracts."

Rule 21 of the curb exchange committee on securities, relied upon by plaintiffs, reads as follows: " An endorsement of a certificate, or a guarantee of a signature to an assignment thereof or to a power of substitution thereon, by a member or by his firm, is a guarantee both of the genuineness of such certificate and of such signature, and is also a guarantee of the legal capacity and authority of the signer. Each assignment or power of substitution must be thus endorsed or guaranteed." This rule, quite obviously, is restricted in its application to securities delivered as the result of " contracts " between members or associate members of that particular exchange, the nature of which contracts are defined by the very provision of the constitution just quoted. An examination of the latter indicates that the transaction which occurred here seemingly finds no mention there, and, therefore, the rule urged may not be said to apply.

In accordance with the stipulation of the parties, I direct a verdict for the defendants with appropriate exception to the plaintiffs. A stay of thirty days and sixty days to make a case is granted.