**ALBERT et al. v. MARTIN CUSTOM MADE TIRES CORPORATION.**

No. 143.

Circuit Court of Appeals, Second Circuit.

Jan. 13, 1941.

Daniel Levy, of New York City, for appellants.

Strauss, Reich & Boyer, of New York City (Philip Feldman and Gerald T. Ryan, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in bankruptcy denying a petition to open pro tanto an order confirming a plan of reorganization in a proceeding under § 77B, 11 U.S.C.A. § 207, so as to allow the petitioners to reclaim certain chattels which they allege the debtor got by fraud. The debtor filed a voluntary petition under Chapter X, 11 U.S.C.A. § 501 et seq., on February 14, 1938, and a plan was confirmed on February 7, 1940, by the order which the petitioners now ask to open. On April 11, 1938, they had filed a claim against the debtor in the sum of $5,038.60, made up of three items, one consisting of two trade acceptances amounting to $2,767, secured by a chattel mortgage upon a "rubber mixing mill" which the petitioners had sold to the debtor. These acceptances represented the unpaid balance of the purchase price. The debtor moved to have the mortgage declared void because it had not been filed, but was unsuccessful until December 18, 1939, when this court decided that the mortgage was void as to other creditors. In re Martin Custom Made Tires Corporation, 2 Cir., 108 F.2d 172. The district court entered its order upon our mandate on February 23, 1940. Meanwhile on December 6, 1939, the judge directed a hearing to be had on January 15, 1940, to consider confirmation of the plan. On the return day the petitioners appeared to oppose—the only parties to do so—and their objections were referred to the referee. He dismissed them on January 29, 1940, and the judge confirmed the plan on the same day, the petitioners defaulting before him. The petition at bar was filed on February 29, 1940; it seeks to rescind the sale and to get back the property and offers to return the mortgage and that part of the purchase price with interest which the petitioners received at the time of delivery. It alleges that the debtor bought the mill on November 20, 1937, and induced the petitioners not to file the chattel mortgage by the following false representations. "A. That under no circumstances had there ever been any mortgage for machinery or equipment recorded against it" (the debtor). "B. That it" (the debtor) "did not anticipate that there would ever be any difficulty in respect to the payment of the unpaid balance of the purchase price. C. That there was no necessity for your petitioners having any worries with respect to the debtor taking care of any commitments that it makes." The judge concluded that the petitioners were barred because, after the hearing before him upon this petition, they had moved to resettle the order entered by the district court in the proceeding to invalidate the mortgage, so as to conform it to our mandate by striking out that part which declared the mortgage void as against the debtor and directed its delivery up to the debtor's attorneys. That in his judgment was an affirmance of the original transaction inconsistent with rescission.

The question is whether the mill was "property" of the debtor under § 311, 11 U.S.C.A. § 711, and depends upon the law of New York. More precisely it is whether the petitioners, who had transferred to the debtor an equitable title to

the mill, voidable for fraud, have lost their right to avoid the transfer and reclaim the mill by conduct inconsistent with disaffirmance. In deciding whether they have done so, any "election of remedies" they may have made, is significant only as evidence of their definitive commitment to affirmance. By the law of New York if the victim of a fraud presses an action through to successful judgment—whether to rescind, or to recover on the promise or for damages—he may not thereafter reverse his position. Terry v. Munger, 121 N.Y. 161, ·24 N.E. 272; American Woolen Co. v. Samuelsohn, 226 N.Y. 61, 123 N.E. 154; Kline v. Myriad Pictures Corp., 211 App. Div. 550, 207 N.Y.S. 109, affirmed, 240 N.Y. 667, 148 N.E. 751. We need not here consider how far short of judgment he may safely go before he discontinues (Clark v. Kirby, 243 N.Y. 295, 153 N.E. 79; Slack v. Ellis, 247 App.Div. 467, 286 N.Y.S. 633; Scheuer v. Martin, 250 App.Div. 46, 293 N.Y.S. 558; Hill v. McKinley, 254 App. Div. 283, 4 N.Y.S.2d 656) because the petitioners never abandoned their claim that the mortgage was valid, but asserted it to the end. Moreover, the victim may commit himself irretrievably to the bargain in other ways than by bringing suit· (Brennan v. National Equitable Investment Co., 247 N.Y. 486, 160 N.E. 924); and.one way, if he is a defrauded seller, is to file a claim in insolvency for dividends due upon the price. Moller v. Tuska, 87 N.Y. 166; Droege v. Ahrens & Ott Mfg. Co., 163 N.Y. 466, 57 N.E. 747. On the other hand, if he mistakenly either affirms or disaffirms the transaction by pressing an action to final defeat, he may reverse his position since he has in fact never had any choice. Henry v. Herrington, 193 N.Y. 218, 86 N.E. 29, 20 L.R.A.,N.S., 249; Schenck v. State Line Telephone Co., 238 N.Y. 308, 144 N.E. 592, 35 A.L.R. 1149; Independent E. L. Corp. v. Brodsky & Co., App. Term, 118 Misc. 561, 194 N.Y.S. 1.

 Although the petitioners did not limit their claim to the amount of the mortgage, so far as the mortgage was security the claim fell within clause (5) of § 77B, sub. b; thus, "the value of the security" (the mill) would be "determined in the manner provided in section 57, clause h [11 U.S.C.A. § 93, sub. h] * * * and if the amount of such value" were "less than the amount of the claim, the excess" alone would be "classified as an unsecured claim." First proviso of § 77B, sub. b.

Section 197 of Chapter X, 11 U.S.C.A. § 597, is in substance the same. The claim was therefore merely the assertion of a legal interest in the mill up to its value; and except to the extent of any deficiency the petitioner did not seek recognition in the "arrangement." The record does not disclose whether the mill was worth more than the unpaid balance of the purchase price when the claim was filed; presumably it was, for the petitioners have offered as a condition to their rescission to return the payment received, which was more than the unpaid balance. If the mill was in fact worth more than that balance, and if the petitioners so understood when they filed the claim, it seems to us that the case must surely fall within the doctrine that the mistaken assertion of rights arising from an affirmance of the transaction, does not bar its later disaffirmance. All that the petitioners could at worst be charged with, is an insistence upon their lien, and their lien failed. More is to be said for the argument that they committed themselves irrevocably, if they supposed that the mill might not be worth the unpaid balance of the price, because in that event they were asking recognition in the "arrangement" to which they correctly supposed they were entitled. Nevertheless, we think that even so they should be relieved. If the doctrine were that by affirming the transaction the victim actually intended to surrender the right to disaffirm as a man surrenders a right· by a legal release, the case would be stronger for refusing them the privilege of recanting, though even a release may be set aside. But the loss of the right to disaffirm is imposed upon the putative victim of the fraud regardless of his intent, and only because it is unfair to allow him to play fast and loose. If with his eyes open he chooses and does not even avail himself of his locus penitentiae by discontinuing, it is reasonable to deny him the privilege of changing his mind. True, the reason usually given for not holding him to his first choice when the right he has chosen proves illusory, is that he has really had no choice; and that reason does not· exist here. Nevertheless, though not deceived in supposing that they had a claim, the petitioners were mistaken as to the validity of their mortgage and it was that mistake which induced them to file the claim, which it now appears they would not have filed, had they known the truth. We cannot· see why a mistake as to the validity of the

security which induces the creditor to affirm the transaction, should not excuse him as much as a mistake as to the validity of the debt, for the basis of the whole doctrine is equitable. Brennan v. National Equitable Investment Co., supra, 247 N.Y. 486, at page 492, 160 N.E. 924; Clark v. Kirby, supra, 243 N.Y. 295, at page 304, 153 N.E. 79; Slack v. Ellis, supra, 247 App.Div. 467, 286 N.Y.S. 633. Mistake is one of the commonest grounds for equitable relief and the petitioners' loss of their rights, if they have any, surely far outweighs any expense and annoyance to the debtor arising from the original mistaken assertion of the mortgage.

There remains the question on which the judge dismissed the petition; i. e. the fact that after the petitioners had filed it they moved to make the order of the district court conform to the mandate. Logically that too was inconsistent with a disaffirmance of the sale, because the petitioners could have no interest in the mortgage if they rescinded. However, the debtor had entered an order not in conformity with our mandate and the petitioners might eventually have an interest in preserving what was left out of their defeat. They may fail in this proceeding to rescind as they failed in asserting their priority under the mortgage; and although we will not now undertake to say what their rights may be in that event, it does not seem to us that they were bound to allow an unlawful order to stand. "Slight and trivial" acts of affirmance will not destroy a rescission once unequivocally made. Weigel v. Cook, 237 N.Y. 136, 140, 142 N.E. 444, 446; Gravenhorst v. Zimmerman, 236 N.Y. 22, 38, 139 N.E. 766, 27 A.L.R. 1465.

Nor does it seem to us that the conduct of the petitioners between the 18th of December, when we decided that they had no priority, until February 29, when they filed the petition at bar, necessarily committed them to affirmance. The delay alone was not important; in spite of the fact that with the invalidity of the mortgage the claim became "unsecured" to its full amount, their inaction was not long enough of itself to charge them with a positive election to accept what they were to get under the "arrangement." We will assume that delay alone, if long enough, would do so; but the debtor, which itself entered no order on our mandate until February 23rd, can scarcely complain that the petitioners took a week more to make up their minds. It is true that they had not been altogether inert all that time; having been cited upon the hearing on confirmation, they appeared and opposed it before the judge, and apparently also before the referee. We do not know what was the reason of their opposition, and again, we cannot say on this record that it concluded them. They had two other claims which gave them a standing as creditors, independently of this transaction, and they may have done nothing which affirmed the sale. On the other hand a hearing may develop that they did just that. Should it appear that the "arrangement" presupposed that the rubbermill should remain the property of the debtor and that the petitioners, with full knowledge of the alleged fraud and of this court's decision invalidating their mortgage lien, objected without announcing to debtor, creditors or referee until after confirmation of the "arrangement," their intention to assert a right of rescission and to reclaim the mill, it may be that the rescission was too late. It was a defence which the debtor must prove.

For the foregoing reasons we think that the petition should not have been dismissed, but that the petitioners should have been allowed to go to trial. As to the merits including the sufficiency of the allegations of fraud we say nothing, for they have not been argued. The appeal is an instance, not infrequent, of the mistaken assumption that controversies can be more expeditiously disposed of upon affidavits than when heard in due course. Here the testimony would not have taken long to put in and after findings on all relevant questions we should have been able to decide it in any of its aspects. That course must be followed when it goes back; we decide nothing now except that this fragmentary record does not show that the petitioners so far affirmed the sale as to bar rescission.

Order reversed; cause remanded for trial.